**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 29, 2012**

# In the Court of Appeals of Georgia

A12A0165. BRATHWAITE v. FULTON-DEKALB HOSPITAL
    AUTHORITY et al.

ANDREWS, Judge.

After being terminated from her job as a medical coder at Grady Memorial Hospital, Althea Brathwaite sued the entity operating the hospital, the Fulton-DeKalb County Hospital Authority d/b/a Grady Health System (Grady); the hospital's chief executive officer, Michael Young; the hospital's senior vice president for human resources, Michael Black; the hospital's chief financial officer, Michael Ayres; and the hospital's medical coding manager, Tracey Quinn. Brathwaite alleged in count one that Grady terminated her in violation of the whistle-blower statute (OCGA § 45-1-4); in count two that Quinn was negligently hired and retained; in count three that Young, Black, Ayres, and Quinn were negligently supervised; in count four that

Quinn tortiously interfered with her employment contract with Grady; and in count five that she was entitled to the award of attorney fees pursuant to OCGA § 13-6-11. The trial court granted Quinn's motion for judgment on the pleadings on the tortious interference claim, and granted summary judgment in favor of Grady, Young, Black, and Ayres on the remaining claims. On Brathwaite's appeal, we reverse the grant of judgment on the pleadings in favor of Quinn, and affirm the grant of summary judgment in favor of Grady, Young, Black, and Ayres.

1. The trial court erred by granting judgment on the pleadings against Brathwaite on her claim that Quinn tortiously interfered with her employment contract with Grady.

The grant of a motion for judgment on the pleadings pursuant to OCGA § 9-11-12 (c) "is proper only where there is a complete failure to state a cause of action or defense." *Pressley v. Maxwell*, 242 Ga. 360 (249 SE2d 49) (1978). When considering the motion, "all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false." Id. (punctuation and citation omitted).

In support of the tortious interference claim in her amended complaint, Brathwaite alleged that, after Quinn was initially hired by Grady as coding manager

in April 2008, she discovered allegations that Quinn had engaged in misconduct in her previous employment; that she reported the allegations to Quinn's supervisor and to Grady's "hotline" for complaints; that Quinn's supervisor reported the allegations to Grady's acting chief executive officer and to Ayres; that Grady conducted an investigation of the allegations; that as a result of her report of the allegations and the investigation, Quinn was forced to resign in June 2008; that after Quinn resigned from Grady, Quinn continued to be in frequent communication with Ayres; that during the period Quinn was not employed by Grady, "Quinn solicited and obtained the agreement of one or more co-defendants, including defendants Ayres and Young, to terminate [Quinn's former supervisor and Brathwaite], among others who had complained about Quinn;" that in September 2008, at the direction of Ayres and Black, Grady re-hired Quinn as coding manager; that shortly after Quinn was re-hired Grady terminated Quinn's former supervisor; that Quinn told others at Grady that she knew Brathwaite was the person who complained about her to the former supervisor; and that Quinn subsequently terminated her in February 2009 claiming that she failed a medical coding test and lacked a current coder certification even though she passed the test and was currently certified as a professional coder.

Taking these allegations as true, Brathwaite asserted that Quinn tortiously interfered with her employment contract with Grady while Quinn was acting (at least part of the time) as a third party or "stranger" to the contract. *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 608-609 (503 SE2d 278) (1998). The elements of a claim for tortious interference with contract are "the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury." Id. at 608. To establish that a defendant acted without privilege, the plaintiff must show that the defendant was a stranger to the contract or business relationship at issue. *ASC Constr. Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 303 Ga. App. 309, 313 (693 SE2d 559) (2010). "[O]nly a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract may be liable for tortious interference." *Perry Golf Course Dev., LLC v. Housing Auth. of the City of Atlanta*, 294 Ga. App. 387, 390 (670 SE2d 171) (2008 (punctuation and citation omitted); *McLane*, 269 Ga. at 608-610. As to an employment contract, "a defendant averred to have been acting in an official capacity is not a stranger to an employment contract (*Johnson v. Rogers*, 214 Ga. App. 557 (3) (448 SE2d 710) (1994)), and neither is an employee's supervisor.

4

*Hylton v. American Assn. for Vocational Instructional Materials*, 214 Ga. App. 635 (448 SE2d 741) (1994)." *McLane*, 269 Ga. at 609; *Dong v. Shepeard Community Blood Center*, 240 Ga. App. 137, 138 (522 SE2d 720) (1999). Even in the context of at-will employment, the employee has a cause of action for tortious interference where "a party with no authority to discharge the employee, being activated by an unlawful scheme or purpose to injure and damage [the employee], maliciously and unlawfully persuades the employer to breach the contract with the employee." *Moore v. Barge*, 210 Ga. App. 552, 553 (436 SE2d 746) (1993) (punctuation and citation omitted).

The trial court ruled that, because the amended complaint alleged that Quinn was Brathwaite's coding manager when Brathwaite was terminated from employment at Grady, Quinn was not a stranger to the contract and therefore cannot be liable for tortious interference with the contract. It is true that actions taken by Quinn while employed by Grady as Brathwaite's manager cannot support the tortious interference claim because, when Quinn took those actions, she was not a stranger to the employment contract. *McLane* 269 Ga. at 609. But the amended complaint alleged that, while not employed by Grady, Quinn took actions to tortiously interfere with Brathwaite's employment contract with Grady by soliciting and obtaining an

5

agreement with Ayres to terminate Brathwaite after Quinn was re-hired. These allegations concerned actions taken by Quinn when she was a stranger to the employment contract which Brathwaite contends were a proximate cause of her later termination. To the extent the complaint alleged that Quinn took tortious actions as a stranger to the employment contract that contributed to Brathwaite's subsequent termination, the complaint stated a cause of action against Quinn for tortious interference. The trial court erred by granting judgment on the pleadings on this cause of action.

2. The trial court correctly granted summary judgment against Brathwaite on her claim that Grady violated the whistle-blower statute at OCGA § 45-1-4.

Brathwaite claimed that her termination by Grady was employment retaliation in violation of OCGA § 45-1-4 after she blew the whistle on Quinn by complaining about her to a supervisor and to the Grady complaint "hotline." The whistle-blower statute at OCGA § 45-1-4 protects a public employee from retaliation by a public employer after the employee complains to the employer about waste, fraud, or abuse relating to state programs and operations under the jurisdiction of the employer. Specifically, the statute provides:

6

No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

[and]

No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

OCGA § 45-1-4 (d) (2), (3).

A "law, rule, or regulation" is defined as "includ[ing] any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance." OCGA § 45-1-4 (2). Even assuming that other elements of the whistle-blower claim were satisfied, the claim still failed because Brathwaite did not complain that there was a "violation of or noncompliance with" any law, rule or regulation as required by the statute, nor did she object to or refuse to participate in "any activity, policy, or practice of [Grady] that [she] has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation."

7

The record shows that Brathwaite complained to a supervisor and to the Grady complaint "hotline" that she received a report that Quinn was terminated from a prior job for embezzlement or fraud, and that she was "concerned [Quinn] will embezzle from the hospital" and "feel[s] that Grady is going to be ripped off." Construed in favor of Brathwaite, the record shows she told the supervisor that she heard Quinn had defrauded her prior employer with respect to a school for medical coders, and that, because Quinn had proposed Grady coders attend the same school, she was reporting this "to protect Grady from [the] possibility [of] the same thing happening [with Grady's coders]." The whistle-blower statute prohibits retaliation for complaints "disclosing a violation of or noncompliance with a law, rule, or regulation" or retaliation for "objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." OCGA § 45-1-4 (d) (2), (3). There is no evidence that Brathwaite's complaint disclosed a violation of or noncompliance with a law, rule, or regulation under the whistle-blower statute. Although Brathwaite's complaint may be construed as her objection to and refusal to participate in fraud or embezzlement by Quinn regarding her proposed schooling for Grady coders, there is no evidence that any Grady coders

8

received the proposed schooling or that any fraud or embezzlement occurred at Grady. The record shows only that Brathwaite complained about the possibility that Quinn would engage in fraud or embezzlement at Grady. On this record, the trial court correctly granted summary judgment against Brathwaite on the whistle-blower claim. *Edmonds v. Bd. of Regents of the Univ. System of Georgia*, 302 Ga. App. 1, 6-7 (689 SE2d 352) (2010).

3. Brathwaite contends that the trial court erred by granting summary judgment: (1) against her claim that Quinn was negligently hired and re-hired, and (2) against her claim that Quinn and Ayres were negligently supervised.

Brathwaite contends that the defendants negligently hired and re-hired Quinn as Grady's medical coding manager knowing of Quinn's tendency to "use her position of trust to defraud her employer," and that there was a direct causal relationship between this tendency and Quinn's unlawful retaliatory termination of Brathwaite. Similarly, Brathwaite contends that negligent supervision of Quinn and Ayres directly contributed to Quinn's unlawful retaliatory termination of Brathwaite. Construed in favor of Brathwaite, the record showed the following: Grady hired Quinn to deal with a growing and costly problem with medical coding at the hospital. Unknown to Grady, Quinn was facing fraud charges in federal court in Michigan and

9

had been terminated from her prior employment for fraud. Quinn did not disclose this on her application and also falsified her educational background, references, and work experience. After Brathwaite reported to her supervisor and the Grady "hotline" the information she obtained about Quinn's misconduct at her prior employment, Grady investigated, discovered the falsifications, and terminated Quinn. After Quinn was terminated in June 2008, the hospital's medical coding problems worsened, and Grady re-hired Quinn in September 2008 despite knowledge of her prior employment problems and prior falsified application. When Quinn was initially hired and when she was re-hired, Grady conducted a criminal background check on each occasion using an independent criminal background search company, and nothing was revealed. After Quinn returned to Grady, Young and Ayres decided to institute a testing and training program that medical coders were required to pass or be terminated. The tests and training were developed by Quinn and others. According to Brathwaite, she obtained a passing score on the testing, but Quinn refused to accept the score, re-graded or re-tested her, and informed her that she had failed and would be terminated. Grady claims that Brathwaite failed the testing. Brathwaite points to evidence that Quinn knew she was the person who reported her prior misconduct to Grady, and claims that Quinn misused the testing as a means to unlawfully terminate

10

her as retaliation for reporting Quinn's prior fraud to Grady. The record also shows that Brathwaite had no contract of employment with Grady for a definite period of time and was an at-will employee.

The trial court granted summary judgement on the negligent hiring, retention, and supervision claims on the basis that, when Grady hired and re-hired Quinn, it made sufficient investigative efforts to acquire knowledge about Quinn's background, and that, considering the knowledge Grady had about Quinn when it hired and re-hired her, the record failed to show that Grady knew or should have anticipated that Quinn, when placed in a position to manage the medical coders and the testing program, would use that position to unlawfully terminate Brathwaite as retaliation for reporting Quinn's prior fraudulent conduct. See *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 459-461 (590 SE2d 807) (2003). We find that the trial court correctly granted summary judgment on these claims, but for a different reason.

The only basis for Brathwaite's claim that her termination from employment at Grady was unlawful was her contention that the whistle-blower statute at OCGA § 45-1-4 protected her from employment retaliation for making the complaints about Quinn. We found in division 2, supra, that the trial court correctly granted summary judgment on the whistle-blower claim. The record shows that Brathwaite was

11

employed at will by Grady, and that Grady raised the defense in its motion for summary judgment that Brathwaite was required to prove an unlawful termination of her at-will employment.[1] The general rule in Georgia is that

> an employee, employed at will and not by contract, cannot bring an action against his employer for wrongful discharge from employment or wrongful interference with the employment contract when and where he is an at will employee with no definite and certain contract of employment. The employer, with or without cause and regardless of its motives may discharge the employee without liability.

*Jellico v. Effingham County*, 221 Ga. App. 252, 253 (471 SE2d 36) (1996) (punctuation and citations omitted); *Balmer v. Elan Corp.*, 278 Ga. 227, 228-230 (599 SE2d 158) (2004). The bar to wrongful discharge claims where the employment is at-will "is a fundamental statutory rule governing employer-employee relations in Georgia." *Reilly v. Alcan Aluminum Corp.*, 272 Ga. 279, 280 (528 SE2d 238) (2000); OCGA § 34-7-1. Although there are limited statutory exceptions to the at-will

---

[1] Brathwaite does not claim, and we find no basis for a claim, that the Grady employee handbook or the medical coding testing program altered her at-will employment status. The Grady handbook, which states that an employee is "free to resign at any time for any reason" and that Grady has "the right to terminate [the employee] at any time with or without cause or notice," clearly sets forth an at-will employment relationship. *Premo v. Georgia Ports Auth.*, 227 Ga. App. 27, 28-29 (488 SE2d 106) (1997).

employment rule, none applies here. See *Eckhardt v. Yerkes Regional Primate Center*, 254 Ga. App. 38-39 (561 SE2d 164) (2002). Because Brathwaite's complaints about Quinn were not protected by the whistle-blower statute at OCGA § 45-1-4, and "the legislature has not created a public policy exception that would allow a plaintiff to recover on a claim of wrongful termination for whistleblowing in these circumstances, the trial court did not err in dismissing the claim." *Eckhardt*, 254 Ga. App. at 39; *Reid v. City of Albany*, 276 Ga. App. 171, 172 (622 SE2d 875) (2005). In the absence of an underlying tort, there was nothing on which to base Brathwaite's claims for negligent hiring, retention, and supervision, or for the imposition of attorney fees. *Eckhardt*, 254 Ga. App. at 39; *Dong*, 240 Ga. App. at 138-139. Under the right for any reason rule, we affirm the trial court's grant of summary judgment.

*Judgment affirmed in part and reversed in part. Boggs, J., concurs. Doyle, P. J., concurs as to Divisions 1 and 3, and concurs in the judgment only as to Division 2.*