301 Ga. 600
FINAL COPY


S17A0001. SPONSLER v. SPONSLER.


MELTON, Presiding Justice.

In this second appearance of this divorce case before us, Jeffrey Sponsler (Husband), by way of application, appeals the trial court's order finding him in contempt of the final decree effectuating his divorce from April Sponsler (Wife).[1] When we granted Husband's application, we issued two questions for argument and consideration: (1) Did the trial court err by ordering both parties to share responsibility for home equity line of credit (HELOC) payments on the rental home until it is sold? (2) Did the trial court err by ordering Husband to repair the rental property?[2] For the reasons set forth below, we find that,

---

[1] In Sponsler v. Sponsler, 287 Ga. 725 (699 SE2d 22) (2010), we affirmed the trial court's decision to incorporate a settlement agreement between the parties into the final divorce decree.

[2] Rather than focus on these questions, Husband sets forth a litany of arguments in his brief that go well beyond the matters set forth in the specific questions posed to the parties by this Court. Below, the trial court found that Husband attempted to expand the scope of litigation throughout the nearly eight-year conflict over this divorce. Husband's appellate brief lends support to the

although the trial court ultimately did not err in finding Husband to be in contempt of the divorce decree, the trial court did err by ordering Husband to share ongoing responsibility for HELOC payments and to make repairs to the rental property.

1. The record shows that the parties separated in the fall of 2007, and a divorce decree which incorporated a partial settlement agreement was entered on June 16, 2009. Thereafter, Husband appealed, and this Court affirmed the divorce decree on June 28, 2010. In relevant part, the divorce decree awarded one of the parties' two homes to Wife.[3] The parties had been using this home as a rental property during the marriage. Pursuant to the decree, Wife was supposed to sell or refinance the rental property; however, at least partially due to Husband's longstanding refusal to cooperate in any effort to get the property refinanced or sold, the rental property has not been sold to date and has been allowed to deteriorate to the point of near worthlessness.

---

trial court's observation.

[3] The other home, which had been used as the marital residence, was awarded to Husband.

On January 14, 2013, Wife filed this contempt action,[4] contending Husband failed to satisfy his obligations under two main provisions of the divorce decree, one of which relates to the questions we posed to the parties.[5] Under this relevant provision, Wife argued that Husband failed to execute a quitclaim deed allowing her to sell the rental property. The provision states:

> Wife is awarded exclusive use, possession of and title to the residence located at 1827 Cashmere Court, Lithonia, Georgia, which the parties referred to during the hearing as the "Rental Property." Said residence is currently encumbered by an Equity Line of Credit with Bank of America (Account no. ending 1699) with a current payoff balance of approximately $92,000.00. This debt is currently solely in the Husband's name. The Wife shall sell this property or re-finance same in her own name on or before March 1, 2010, thereby completely removing all financial liability from the Husband. The parties shall timely execute a Quitclaim Deed in order to effectuate this transaction. Beginning on March 1,

---

[4] Husband filed a separate motion for contempt, and the separate contempt actions were consolidated.

[5] Wife also sought to enforce the provision of the decree requiring Husband to transfer $89,380 of a 401(k) retirement plan. This provision states: "Accordingly, the Wife shall receive the sum of $89,380 and the Husband shall be entitled to the remaining balance thereafter. The Husband shall promptly prepare a Qualified Domestic Relations Order (QDRO) to comply with said provisions." The trial court found that there was "no valid, plausible, acceptable justification for not completing the Qualified Domestic Relations Order the day after this divorce became final." Because of Husband's lengthy delay in signing the QDRO, the trial court awarded Wife interest on the portion she should have received after the divorce decree became final and binding.

2009, the Wife shall be exclusively liable for all debt, mortgage payments, repairs, maintenance, taxes and insurance for the foregoing property. Until the Wife refinances the rental property in her own name, she shall timely make all payments for the rental property to protect the credit of the Husband, and she shall be solely responsible for any late fees and payments associated with any late payments thereon.

After various scheduling issues, the trial court held an initial hearing on November 6, 2013. At that time, the trial court appointed a receiver and ordered the sale of the rental property in an order dated November 22, 2013. Husband was instructed that a short sale might be required, that part of the HELOC balance might remain outstanding, and that the determination of which party would be responsible for satisfying that balance might have to be determined at a future hearing. Thereafter, the receiver found a buyer for the property, but Husband, despite the clear instructions from the trial court, refused to fully cooperate with the sale. He also challenged the work of the receiver and contended that the receiver had not properly earned the fees he was charging. Ultimately, the receiver filed his own separate motion for contempt.

In the underlying order in this case, the trial court granted the motions filed by Wife and the receiver, and it denied Husband's motion.

2. (a) With regard to the rental property, the trial court made the following

4

findings of fact. From early September 2007 through May 2009, Husband had exclusive possession and control of the property. During that period, the title to the property was in Husband's name, and Husband was the sole borrower of record with regard to the HELOC. Pictures taken in August 2007 showed that the property was in good and marketable condition at that time. Upon Wife's first inspection of the rental property in February 2009, however, she discovered that the property had been damaged and was no longer in good and marketable condition — a number of windows were broken and the air conditioning unit had been removed.[6] In June 2010, after all appellate proceedings had been exhausted and the divorce decree became final, Wife sent Husband a request to file an insurance claim for the damage to the rental property, but Husband refused to cooperate with the filing of any insurance claims. No repairs were made, and the property, now abandoned, continued to be vandalized and allowed to deteriorate. For this entire span of time, Husband refused to sign a quitclaim deed transferring the property to Wife.[7] Ultimately, the trial court found that the

---

[6] The final divorce decree which incorporates the settlement agreement was entered on June 16, 2009.

[7] After Wife filed this contempt action, Husband was eventually required to sign a quitclaim deed in open court in July 2013, prior to the appointment of

rental property was allowed to be spoiled intentionally by Husband, both by Husband's refusal to assist with an insurance claim and his refusal to timely execute a quitclaim deed. To remedy Husband's contempt, the trial court ordered Husband to expend $35,000 to bring the property back to marketable condition and to share payments on the HELOC equally with Wife until the rental property was sold.

> We have previously explained that
>
> [a] court may not modify a previous decree in a contempt order. [Cit.] However, a court may always interpret and clarify its own orders. [Cits.] The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification. [Cit.] "The trial court has the power to see that there be compliance with the intent and spirit of its decrees and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party." [Cit.] The trial court in a contempt case has wide discretion to determine whether his orders have been violated. His determination will not be disturbed on appeal in the absence of an abuse of discretion. [Cits.]

Kaufmann v. Kaufmann, 246 Ga. 266, 268-269 (3) (271 SE2d 175) (1980). Furthermore, "[i]f there is any evidence in the record to support a trial judge's determination that a party either has or has not wilfully disobeyed the trial

---

a receiver.

6

court's order, the decision of the trial court will be affirmed on appeal." (Citation omitted.) Crowder v. Crowder, 236 Ga. 612 (225 SE2d 16) (1976).

As detailed above, there is ample evidence to support the trial court's conclusion that Husband was in contempt for failing to execute a quitclaim deed in favor of Wife. Therefore, the finding of contempt, itself, was proper. With regard to the remedies, however, the trial court went too far. With regard to repairs to the property, the divorce decree places that responsibility on Wife for all periods of time after March 1, 2009. While Husband might be held responsible for damages and necessary repairs prior to that operative date, the trial court was not authorized, in accordance with the divorce decree, to hold Husband responsible for all repairs needed by the property for damage occurring after March 1, 2009. Likewise, the trial court erred when it ruled that each party shall be equally responsible for the HELOC payment and taxes on the property until the property is sold. This potentially indeterminate and ongoing obligation is directly contrary to the terms of the decree, which place ongoing responsibility for the HELOC payments on Wife after March 1, 2009. In both cases, the remedies set forth by the trial court amount to a modification of the terms of the divorce decree. See, e.g., Everett v. Everett, 256 Ga. 632 (2) (352

SE2d 370) (1987).[8] Therefore, the portions of the trial court's order requiring that Husband pay $35,000 to repair the rental property and require Husband to share in HELOC payments until the rental property is sold must be reversed.[9]

(b) The dissent argues that the trial court properly ordered Husband to pay $35,000 to bring the rental property back to marketable condition for three main reasons, each of which is faulty. First, the dissent states that the trial court properly found that Husband's contumacious conduct made it *impossible* for Wife to make *any* repairs to the property. The dissent, however, points to no actual evidence of record supporting a finding that Wife was wholly prevented from performing her obligations to repair the property in accordance with the express wording of the divorce decree. The dissent defines neither Husband's conduct nor the manner by which any such conduct caused additional damage

---

[8] As a general matter, a trial court may have a broader range of remedies in a modification action.

[9] Husband raises numerous other issues in his brief relating both to the trial court's decision on Husband's motion for contempt against Wife and the receiver's motion for contempt against Husband. These issues, however, were argued and litigated extensively below, and the record supports the trial court's conclusions with respect to all of the other issues raised by Husband relating to this contempt proceeding, other than those issues discussed in this opinion.

8

to the property after Wife took control and possession.[10]

Second, the dissent relies on Ziyad v. El-Amin, 293 Ga. 871 (750 SE2d 337) (2013), for the proposition that the trial court could require Husband to pay for all repairs to the property in order to meet the exigencies caused by Husband's contumacious conduct. As an initial matter, Ziyad is not applicable to this case. In Ziyad, the husband was required to pay down the principal indebtedness on a piece of property in order to make it marketable in order to remedy his failure to sell that property in accordance with the divorce decree. The decree required the husband in that case to sell the property, and the trial court simply ensured that the husband satisfy his obligation that existed on the face of the decree. In this case, however, the trial court is requiring Husband to pay for repairs on a piece of property despite the fact that the decree actually places those obligations on Wife. In other words, the trial court is requiring exactly the opposite of the express terms of the decree. Ziyad does not support this remedy, and, in fact, it recognizes that any such modification of a divorce decree is improper by stating: "As we have explained, 'a trial court has broad

---

[10] In fact, the transcripts of record reveal that, at one point, Wife's family had performed renovations on the property in the past.

9

discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced.' Darroch v. Willis, 286 Ga. 566, 570 (3) (690 SE2d 410) (2010)." Ziyad, supra, 293 Ga. at 872. So, Ziyad actually recognizes the infirmity of the dissent's position rather than supporting it.

Finally, as did the trial court, the dissent fails to cite the operative language of the divorce decree which begins and ends consideration of the issues in this case: "Beginning on March 1, 2009, the Wife shall be exclusively liable for all debt, mortgage payments, repairs, maintenance, taxes and insurance for the foregoing property." While the conclusions of the trial court and the dissent may seem satisfying in the context of this long and exhaustive divorce, they require that the divorce decree not only be modified, but rewritten. That is not an appropriate legal remedy.

3. In its order finding Husband in contempt, the trial court also awarded attorney fees to Wife pursuant to OCGA § 9-15-14. From the trial court's order, however, it cannot be determined whether any part of that award flowed from Husband's litigation of the remedies for contempt that have been reversed in this opinion. For this reason, we must vacate the trial court's award of attorney fees

10

and remand the case for reconsideration of that award in light of this opinion.

Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. All the Justices concur, except Hunstein and Grant, JJ., who concur in part and dissent in part.

GRANT, Justice, concurring in part and dissenting in part.

While I concur in the majority's conclusion that the trial court properly held Husband in contempt, and I concur in its determination that requiring Husband to pay one-half of the HELOC payments and taxes on the rental property until its sale was an improper modification of the divorce decree, I disagree with its conclusion that the remedy fashioned with regard to repair of

11

the property was improper. In addition, regardless of any error in the remedies the trial court fashioned to address Husband's contempt, I disagree with the conclusion that the attorney fee award — predicated wholly on Husband's harassing and litigious conduct in these protracted contempt proceedings — must be vacated. Accordingly, I must respectfully dissent, to the extent the majority reverses that portion of the trial court's order which requires Husband to pay the cost of restoring the property to the condition in which it should have been when Wife assumed possession of it, and to the extent it vacates the award of attorney fees.

I.

The evidence is more than sufficient to support the trial court's conclusion that Husband was in contempt of the divorce decree, not only for failing to execute a quitclaim deed in favor of Wife, but also for failing to maintain the rental property in good, marketable condition during the time the property was in his possession, and failing to cooperate with Wife in filing claims for repairs covered by insurance on the property. The trial court was likewise well supported in its express finding that Husband's sustained pattern of contumacious conduct made it impossible for Wife to comply with her

obligations in regard to the maintenance and repair of the rental property once that responsibility shifted to her. For this reason, I would find that the trial court was authorized to order Husband, as a remedy for his contempt, to pay the costs required to restore the rental property to a marketable condition.[11] See Ziyad v. El-Amin, 293 Ga. 871 (750 SE2d 337) (2013) (affirming contempt order requiring husband to pay down principal of indebtedness on property, as a remedy for husband's failure to sell or refinance property as required by divorce decree, where the outstanding indebtedness had rendered property unsalable). Where, as here, the contemnor's misconduct prevents the other party from complying with her obligations under the divorce decree, a trial court is empowered to fashion a remedy that "meet[s] the exigencies" resulting from such misconduct and thereby "enforce its decrees." OCGA § 23-4-31 ("[a] superior court shall have full power to mold its decrees so as to meet the exigencies of each case and shall have full power to enforce its decrees when rendered"). See also Smith v. Smith, 293 Ga. 563 (1) (748 SE2d 456) (2013) (affirming award of dollar value of items divorce decree required husband to

---

[11] The trial court noted that the $35,000 repair cost estimate was derived from Husband's evidence on this subject, and neither of the parties has contested this amount on appeal.

2

return to wife, as remedy for husband's failure to do so). The trial court stated

at the conclusion of the multi-day contempt hearing that, in ordering Husband

to pay the repair costs, its intent was

> to make [Wife] whole under this agreement and [Husband] whole
> under their agreement, that his HELOC is satisfied and she receives
> a portion of the asset she thought she was receiving if she had
> received the house in good, marketable condition.

As the repair cost provision falls squarely within the realm of enforcing the trial

court's prior decree, I would affirm that portion of the contempt order that

requires Husband to pay up to $35,000 to restore the rental property to a

marketable condition. To hold otherwise is to render the trial court impotent to

employ the most rational of remedies to address Husband's contempt and

effectuate the intent of the original divorce decree.

## II.

In awarding attorney fees to Wife, the trial court stated:

> The Court is deeply concerned about the way [Husband] can
> convince himself to take any position he wants to justify his
> noncompliance [with] any and all of the Court's verbal, specific
> instructions and the Court's written orders. [Husband] has
> demonstrated exhaustive measures to find loopholes in provisions
> of any orders that he does not agree with, but then he uses the ones
> that are favorable to [Wife] as a club. . . . [Husband] expanded this

3

litigation unnecessarily and uses the legal process to unjustifiably harass and intimidate [Wife].

As a result, the trial court awarded Wife $20,000 in fees under OCGA § 9-15-14 (a) and (b).[12] It is apparent that this award was attributable entirely to Husband's well-documented recalcitrance in complying with his clear legal obligations, his reliance on unfounded legal positions, and his prolonging of the litigation, tactics which Husband employed, in the trial court's view, "as a way

---

[12] These subsections provide:

(a) In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

(b) The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

OCGA § 9-15-14.

4

to emotionally abuse [Wife]." Notably, the $20,000 award amounted to approximately half of the $38,766 in fees that Wife had incurred in connection with the contempt proceedings; at the final hearing, Wife's counsel argued with respect to the attorney fee issue that "[H]usband's conduct generated at least half of [Wife's] fees, at least half, if not more." Thus, it is clear that the fee award was designed to compensate Wife for fees attributable to responding to Husband's willful and unjustifiable disregard for his obligations under the divorce decree — a disregard that even the majority agrees constitutes contempt — as well as his brazen abuse of the legal process. Because the majority opinion neither disturbs the finding of contempt nor questions the conclusion that Husband has abused the legal process, even if some or all of the contempt remedies the trial court devised are subject to reversal, there is no reason to disturb the fee award, as it rests solidly on findings that remain intact even taking into account the majority's disposition.

In addition, even if it were necessary to winnow out the attorney fees attributable to time spent by Wife's counsel as to the remedies the majority now adjudges to be improper, it bears noting that the issue of remedies was raised at the end of the third day of the third hearing with the third trial judge to preside over these contempt proceedings. In fact, it was the trial judge who initiated the

discussion of remedies and who then, declining to adopt the remedies proposed by Wife, devised the remedies the majority now invalidates. Any attorney time spent on the particular remedies the Court's majority now holds improper was, therefore, de minimis at best. Given that the actual award represented only slightly more than half of the total fees incurred, the possibility that some minimal portion of attorney time was spent advocating for improper remedies should not require reconsideration of the fee award.

For these reasons, I would affirm the trial court's award of attorney fees.

I am authorized to state that Justice Hunstein joins in this partial concurrence and partial dissent.

Decided May 30, 201 – Reconsideration denied June 30, 2017.

Domestic relations. Gwinnett Superior Court. Before Judge Schrader.

Terrence A. Shannon; J. Erik Heath, for appellant.

Margaret G. Washburn, for appellee.

Thompson, O'Brien, Kemp & Nasuti, J. Patrick O'Brien, amicus curiae.