**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 21, 2019

# In the Court of Appeals of Georgia

A19A0281. GRIFFIN v. TURNER.

MCFADDEN, Presiding Judge.

Gary Daniel Griffin filed this action against Dennis R. Turner for tortious interference with contractual and business relations. The trial court granted summary judgment to Turner and ruled that he was entitled to OCGA § 9-15-14 attorney fees, although the court reserved ruling on the amount of the attorney fees award. Griffin filed this appeal.

We affirm the grant of summary judgment to Turner to the extent that Griffin's claims arise from the termination of three specific accounts of his landscaping business. As for the remainder of Griffin's claims, Turner has not shown that there is no genuine issue of material fact such that he is entitled to judgment as a matter of

law. So we otherwise reverse the grant of summary judgment. We vacate the attorney fees ruling.

1. *Facts and proceedings below.*

A trial court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may demonstrate that he is entitled to summary judgment "by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (697 SE2d 779) (2010) (citation omitted). Once the defendant has met this burden, the plaintiff "must point to specific evidence giving rise to a triable issue" or suffer summary judgment. Id.

"We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Pennington v. Gwinnett County*, 329 Ga. App. 255 (764 SE2d 860) (2014) (citation and punctuation omitted).

Viewed in the light most favorable to Griffin as the nonmovant, the record shows that Griffin and Turner, both residents of South Carolina, are next door

neighbors who disagree about the location of the property line between their properties. The disagreement has resulted in litigation separate from this case.

Since 2007, Griffin had worked as a photographer for Strawbridge Studios, a company that provides photography services to public school systems. He also owns a landscaping company, but his photography work for Strawbridge was his primary employment and source of income.

In April 2015, four months after Griffin had purchased the property next to Turner's, Turner called the administrative offices of Strawbridge, identified himself as a concerned parent who had obtained a history of Griffin's purported drug arrests, and said that Griffin posed a danger to school children. Turner threatened to take further action with school authorities unless Strawbridge "dealt" with Griffin's employment at the schools. Griffin attached to his affidavit filed in opposition to the summary judgment motion a transcript of one of Turner's telephone calls to Strawbridge. Griffin's supervisor asked Griffin to resign from Strawbridge, although he had worked there for eight years. The supervisor was concerned about protecting Strawbridge's relationships with the school systems where Griffin worked, given Turner's history of filing false police reports and the fact that Turner actually had contacted one of the school boards.

3

Over a two-month period in early 2015, Turner filed twenty complaints with code enforcement authorities about Griffin storing landscaping equipment at his residence. Turner's complaints were dismissed. But due to Turner, the sheriff department issued a warning to Griffin for interfering with Turner's construction of a fence in the disputed area of property. Griffin was arrested for violating the warning and jailed for three days. While he was in jail, he was unable to manage his landscaping business, and his absence caused a landscaping project in Martinez, Georgia to be shut down. The charge was dismissed, and the record of the arrest and the mug shot were ordered to be expunged.

Some of Griffin's landscaping customers remarked to him that Turner had contacted them and made disparaging statements about Griffin. Three of his customers, Plowman, Cone, and Barr, cancelled his services. But Cone and Barr had never met, spoken with, or seen Turner, and Plowman testified that he terminated Griffin's landscaping service because he was unhappy with the work, not because of anything Turner said to him.

Griffin filed a civil lawsuit in South Carolina against Turner regarding the boundary dispute and Turner's alleged trespassing on Griffin's property. He filed this lawsuit against Turner for interference with contractual and business relations

4

regarding his employment with Strawbridge and his landscaping business. From the record it appears that there has been no discovery.

Turner moved to dismiss this complaint for lack of personal jurisdiction and for failure to state a claim. The trial court denied the motion to dismiss.[1] Nonetheless, Turner filed a motion for OCGA § 9-15-14 attorney fees. Although Turner had not moved for summary judgment, Griffin filed a document entitled "plaintiff's response to defendant's motion for attorney fees or alternatively for summary judgment." A few days later, Turner did file a motion for summary judgment and renewed his motion to dismiss. The trial court granted Turner's motion for summary judgment and his motion for OCGA § 9-15-14 attorney fees but reserved ruling on the amount of fees. Griffin then filed this appeal.

2. *Tortious interference claims.*

Griffin argues that the trial court erred by granting Tuner's motion for summary judgment. We hold that Turner was entitled to summary judgment only on Griffin's claims relating to three specific landscaping accounts.

---

[1]Turner argues in his brief on appeal that the trial court erred by denying the motion to dismiss for lack of personal jurisdiction, but he did not file a cross-appeal to challenge that ruling.

To recover under a theory of tortious interference with contractual relations, Griffin must show "the existence of a valid contract and that [Turner] acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with [Griffin], thereby causing [Griffin] financial injury." *Brathwaite v. Fulton-DeKalb Hosp. Auth.*, 317 Ga. App. 111, 113 (1) (729 SE2d 625) (2012) (citation and punctuation omitted). To recover under a theory of tortious interference with business relations, Griffin must show that Turner "(1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with [Griffin], and (4) caused [Griffin] financial injury." *Renden, Inc. v. Liberty Real Estate Partnership*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994) (emphasis omitted). "[T]ortious interference with contractual relations deals with the violation of property rights created under an existing contract. . . [while] tortious interference with business relations . . . . involves interference with prospective or inchoate property rights that the plaintiff has, or at least hopes to have, as a result of the operation of his business or pursuit of his occupation." Adams, Ga. Law of Torts § 33:3 (2018).

(a) *Strawbridge employment.*

6

Turner argued below and argues on appeal that Griffin could not pursue his claim for tortious interference with his Strawbridge employment because Griffin did not have a contract with Strawbridge.

Although Griffin's relationship with Strawbridge may have been terminable at will, such a relationship may give rise to certain contractual rights. See *O'Connor v. Fulton County*, 302 Ga. 70, 71 (1) (805 SE2d 56) (2017); *Shelnutt v. Mayor & Aldermen of City of Savannah*, 333 Ga. App. 446, 450 (2) (776 SE2d 650) (2015) ("Although terminable-at-will employment does not give an employee a contractual right to remain employed, an at-will employment relationship can give rise to certain contractual rights.") (citations and footnote omitted); *Guinn v. Conwood Corp.*, 185 Ga. App. 41, 42 (1) (363 SE2d 271) (1987); *Alston v. Brown Transp. Corp.*, 182 Ga. App. 632, 633 (2) (356 SE2d 517) (1987); *Elliott v. Delta Air Lines*, 116 Ga. App. 36 (156 SE2d 656) (1967); *Brazzeal v. Commercial Cas. Ins. Co.*, 51 Ga. App. 471, 180 SE 853 (1935).

Such rights are "valuable [and] may not be unlawfully interfered with by a third person." *Ga. Power Co. v. Busbin*, 242 Ga. 612, 613 (250 SE2d 442) (1978). And "[e]ven in the context of at-will employment, the employee has a cause of action for tortious interference where a party with no authority to discharge the employee, being

7

activated by an unlawful scheme or purpose to injure and damage the employee, maliciously and unlawfully persuades the employer to breach the contract with the employee." *Brathwaite*, supra, 317 Ga. App. at 113 (1) (citations and punctuation omitted). Whether Griffin had contractual rights stemming from his relationship with Strawbridge with which Turner interfered is a question of fact. And, of course, the existence of a contract is not an element of a claim for tortious interference with business relations. See *Renden, Inc.*, supra, 213 Ga. App. at 334 (2).

Morever, contrary to Turner's argument below and on appeal, the fact that Griffin resigned does not mean that his claim fails as a matter of law. "Interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards performance of the duties under the contract or *makes the performance more difficult* or expensive." *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 774-775 (2) (399 SE2d 529) (1990) (emphasis added). "Interference with a contractual relationship, including hindering the performance of contractual duties, is actionable." *Perry Golf Course Dev. v. Housing Auth.*, 294 Ga. App. 387, 397 (8) (a) (670 SE2d 171) (2008). A jury could find that Turner's interference hindered Griffin's performance of his employment duties and made them more difficult, ultimately resulting in his resignation. See

8

*Walton v. James & Dean*, 177 Ga. App. 77, 79 (4) (338 SE2d 516) (1985) (genuine issue of material fact remained as to whether defendant wilfully interfered with the plaintiff's ability to perform the duties of his employment, forcing him to resign) (physical precedent only). In sum, Griffin has pointed to evidence that precluded summary judgment to Turner on the claim that Turner tortiously interfered with Griffin's employment with Strawbridge, and we reverse the trial court's grant of summary judgment to Turner on this claim.

(b) *Landscaping business.*

Although Turner moved for complete summary judgment, he argues only that there was no evidence that he interfered with three specific customers of Griffin's landscaping business, Plowman, Cone, and Barr. We hold that the trial court properly granted summary judgment to Turner to the extent Griffin's claims were based on these three accounts, but that the trial court otherwise erred by granting summary judgment to Turner on Griffin's claims for tortious interference with his landscaping business.

Turner presented evidence that he did not induce Plowman, Cone, and Barr to terminate their accounts with Griffin. He presented Plowman's affidavit in which Plowman testified that he terminated Griffin's landscaping service because he was

9

unhappy with his work, not because of anything Turner said to him. Turner presented evidence that he never contacted either Cone or Barr. He also presented the affidavit of Cone who confirmed that she never spoke with Turner.

Inducement is an element common to both tortious interference with business relations and tortious interference with contractual relations. *Meadow Springs, LLC v. IH Riverdale*, 323 Ga. App. 478, 480 (1) (a) (747 SE2d 47) (2013). "Where it has been demonstrated that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case, the burden shifts to the nonmoving party to point out specific evidence giving rise to a triable issue." *Avion Systems v. Bellomo*, 338 Ga. App. 141, 144 (1) (789 SE2d 374) (2016) (citation and punctuation omitted). To satisfy this burden, Griffin asserted in his affidavit that Turner contacted Cone's daughter, son-in-law, and minister and Barr's minister to convince them to persuade Cone and Barr to cancel their contracts. But these assertions are hearsay, and "[a]ll hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment." *Goodhart v. Atlanta Gas Light Co.*, 349 Ga. App. 65, 72 (2) (a) (825 SE2d 465) (2019). Consequently, Griffin has failed to point out specific evidence giving rise to a triable issue as to Turner inducing Griffin's customers Plowman, Cone, and Barr to terminate

his landscaping services. So the trial court did not err by granting summary judgment to Turner on Griffin's claim for tortious interference with these customers of his landscaping business.

But Griffin's tortious interference claims are not limited to those three customers. He alleges generally that Turner interfered with his "business" and his relationship with unspecified "landscaping customers." It may be that Griffin was referring only to Plowman, Cone, and Barr. But we cannot make that assumption. Griffin, "as the non-moving party on summary judgment, is entitled to all favorable inferences and reasonable doubts which may arise from a fully developed record [once the parties have engaged in discovery]." *Shipley v. Handicaps Mobility System*, 222 Ga. App. 101, 102 (473 SE2d 533) (1996).

Turner has not used the available discovery procedures to determine if there are any other customers and, if so, who they are. As the record now stands, there is no evidence that the three specified customers are the only ones at issue.

The burden never shifted to Griffin to point to specific evidence giving rise to a triable issue on any other tortious interference claims. See *Cowart*, 287 Ga. at 623 (1). Consequently, the grant of complete summary judgment on the claims for tortious

11

interference with the landscaping business — other than the claims relating to the three customers — must be reversed.

3. *Attorney fees*.

We cannot determine from the trial court's order whether any part of the attorney fees award flowed from the grant of summary judgment that has been reversed in this opinion. "For this reason, we must vacate the trial court's award of attorney fees and remand the case for reconsideration of that award in light of this opinion." *Sponsler v. Sponsler*, 301 Ga. 600, 605 (3) (800 SE2d 564) (2017). We observe that

> (a)n order awarding attorney fees pursuant to OCGA § 9-15-14 *must specifically state whether the award is made under OCGA § 9-15-14 (a) or (b)*. Additionally, the court must make express findings of fact and conclusions of law as to the statutory basis for any such award and the conduct which would authorize it. Specificity in the award is important because the standards of appellate review are different under each subsection: the standard under subsection (a) is the "any evidence" rule; the standard under subsection (b) is abuse of discretion.

*Fulton County School Dist. v. Hersh*, 320 Ga. App. 808, 814-15 (2) (740 SE2d 760) (2013) (emphasis in original; citations and punctuation omitted). See also *Hall v. Hall*, 241 Ga. App. 690, 692 (1) (527 SE2d 288) (1999) ("where a party asserts an

12

arguably meritorious position, there was not a complete absence of any justiciable issue of law or fact such that an award of attorney fees is appropriate") (punctuation omitted); *Brown v. Kinser*, 218 Ga. App. 385, 387 (1) (461 SE2d 564) (1995) ("applicant is not entitled to attorney fees merely because summary judgment was granted in his favor"); *Mobley v. Coast House*, 182 Ga. App. 305, 307 (355 SE2d 686) (1987) ("'threats' associated with institution of a civil suit cannot and do not constitute duress and are not actionable in tort").

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded in part. Goss, J., concurs. McMillian, J., concurs fully in Divisions 1, 2(a) and 3, and dissents in Division 2(b).\**

**DIVISION 2(b) OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**

A19A0281.  GRIFFIN v. TURNER.

McMILLIAN, Judge, concurring in part and dissenting in part.

Although I concur fully in Divisions 1, 2 (a), and 3, I must respectfully dissent in Division 2 (b).  As noted by the majority, Griffin's complaint includes allegations that Turner had committed acts amounting to tortious interference in his landscaping business beyond those involving the three customers specifically identified. At the summary judgment stage, however, "the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citation omitted.) *Patterson v. Kevon, LLC*, 304 Ga. 232, 235-36 (818 SE2d 575) (2018).  Here, Turner moved for complete summary judgment and introduced evidence refuting the factual allegations as to each of the specifically named customers of Griffin's landscaping business.  In response, Griffin failed to point out specific evidence giving rise to a triable issue as to any other acts that might

constitute tortious interference in his landscaping business.  Accordingly, I would

affirm that portion of the trial court's order granting summary judgment in favor of

Turner on Griffin's claim for tortious interference with his landscaping business.