**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 29, 2022**

# In the Court of Appeals of Georgia

A22A0621. VAUGHN v. VAUGHN.

BROWN, Judge.

In this discretionary appeal, Wade Vaughn, the former husband of Carolyn Vaughn, appeals from the trial court's order finding him in contempt of a final divorce decree and a subsequent order of clarification.[1] He contends that the trial court erred in impermissibly modifying the terms of the settlement agreement incorporated into the final divorce decree with respect to the sale of the marital home, payment of the mortgage following the divorce, and reimbursement of the wife for repairs. He also asserts that no evidence supports the amount the trial court required him to pay the wife for repairs. For the reasons explained below, we affirm the

---

[1] For ease of reference, we will refer to Carolyn Vaughn as "the wife" and Wade Vaughn as "the husband."

portion of the trial court's order relating to repair costs and reverse the portion of the trial court's order giving the wife credit for mortgage principle payments and allowing the wife to refinance the home, select the realtor, and have final decision-making authority on purchase offers.[2]

The record shows that the parties were divorced on February 8, 2017, and the final divorce decree incorporated a settlement agreement between the parties. The settlement agreement consists of a preprinted form on which the parties, without the benefit of counsel, filled in various blanks by hand. The division of property was outlined in an exhibit that does not appear to be a preprinted form and was partially typed and partially handwritten. With regard to the marital home, it states:

> Due to the cost of separate living expenses, the [wife] and [husband] agree to both maintain residency at the [marital] address until the sale of the home.
>
> The [wife] and [husband] agree to immediately begin the needed repairs and improvements on the home necessary for listing for sale by June 2017. Consultations by real estate agents, appraisers, and the like

---

[2] The husband does not assert any error in the portion of the trial court's order finding him in contempt of provisions of the divorce decree not related to the marital home.

2

can be used, and their input can be considered to determine[3] what repairs/improvements will yield the best resale value of the home. Repairs and improvements will be paid by the [wife] and [husband] equally, both in time and cost.

All reasonable offers to purchase the home shall be accepted.

Proceeds (or shortfalls) to be divided 50/50 by the Parties.

In June 2017, the husband moved to Colorado, and the wife took over all expenses of the marital home on August 1, 2017.

On December 12, 2018, the wife filed a petition for contempt against the husband asserting, in relevant part, that he had failed to contribute an equal share of the mortgage, taxes, utilities, pest control, insurance, and HOA fees for the martial home. She also asserted that she had spent over $35,000 to make the marital home marketable with additional repairs of almost $40,000 still needed.

Following a July 6, 2021 bench trial, the trial court entered an order on August 27, 2021, finding "that neither party made the necessary efforts or otherwise took the initiative to place the house on the market in a timely manner and certainly not by

---

[3] The word "List" and a right arrow is written by hand in the column beside the word "determine."

June 2017" as required by the settlement agreement. It declined to find the husband in willful contempt,[4] but found it

> reasonable to require [the husband] to reimburse [the wife] the sum of $16,341.82 for repairs made to the marital residence. Furthermore, [the wife] is required to refinance the residence within three (3) months . . . and shall pay [the husband] his portion of the equity in the home immediately upon closing. Should she fail to refinance within this period, the home shall be placed on the market for sale. [The wife] may select the realtor; however, the parties shall discuss the price at which to list the home as well as all reasonable offers to purchase the home. Should the parties be unable to reach an agreement on a purchase offer, [the wife] has final decision-making authority. . . .

> When calculating [the husband's] portion of the equity in the home following its sale or refinance, [the wife] shall receive credit for all mortgage payments that she made after [the husband] moved from the residence. In addition, all closing costs, realtor fees, and any other such administrative costs of this nature shall be subtracted from the equity prior to the division of the proceeds. The figure remaining following the deduction for mortgage payments made by [the wife] and the costs identified above is the amount of equity to be split by the parties.

---

[4] The trial court found the husband in contempt for failing to pay credit card debt, unpaid federal taxes, and medical expenses for a dependent child. It ordered that the husband could purge the debt by reimbursing the wife three days after the contempt order was docketed.

Based on the silence of the settlement agreement with regard "to household expenses such as the mortgage, utilities, HOA fees, etc.," the trial court ruled that the husband was not required to pay any such expenses and declined to find him in contempt for failing to do something he was not ordered to do.

On September 22, 2021, the trial court entered a clarifying order deleting mortgage payments from its definition of "household expenses" which the husband was not required to pay. It also clarified that the wife would receive credit for only the principal portion of monthly payments she made after the husband vacated the marital home.

1. In related enumerations of error, the husband asserts that the trial court impermissibly modified the parties' settlement agreement in a contempt action by supplying terms for events not anticipated by the parties, i.e., a failure to list the home for sale by June 2017, the husband moving out, and the wife taking over the financial cost of the home. In support of his argument, the husband cites to the well-established rule that "a court may not modify a previous decree in a contempt order." (Citation and punctuation omitted.) *Sponsler v. Sponsler*, 301 Ga. 600, 603 (2) (a) (800 SE2d 564) (2017), and asks this Court to employ a de novo standard of review. The wife asserts we should not consider this argument because it is raised for the first time on

5

appeal and that the trial court's "factual findings . . . regarding the terms of the agreement" are subject to an "any evidence standard of review." We will therefore begin our analysis with a discussion of whether this argument has been preserved for our review and the appropriate standard of review.

First, we find no merit in the wife's contention that the husband was required to file a post-order motion or objection in the trial court to challenge on appeal any alleged modification of the settlement agreement in the trial court's order. The cases cited by the wife are readily distinguishable and unpersuasive on this issue.[5] With regard to the standard of review,

> [t]he trial court in a contempt case has wide discretion to determine whether its orders have been violated. The court is not authorized to modify a previous decree in a contempt order, but it is always empowered to interpret and clarify its own orders. If there is any evidence to support a trial court's determination that its order has been

---

[5] *Old Stone Co. I v. Hughes*, 284 Ga. 259, 261(2) (663 SE2d 687) (2008) (trial court discussed the proposed remedy with appellants, appellants raised no objection, and acquiesced by performing remedy imposed by the trial court); *Olagbegi v. Hutto*, 320 Ga. App. 436, 437-438 (1) (740 SE2d 190) (2013) (appellant waived right to complain about an attorney's pro hac vice appearance by failing to adequately raise the issue in the trial court); *Pep Boys-Manny, Moe & Jack v. Yahyapour*, 279 Ga. App. 674 (2) (632 SE2d 385) (2006) (stating general principle that a failure to obtain a ruling on motions or objections will ordinarily result in a waiver of the issue on appeal).

6

willfully violated, this Court must affirm that determination on appeal. However, where a contempt action turns on the meaning of terms in an incorporated settlement agreement, construction of those terms is a question of law that is subject to de novo review on appeal.

(Citations and punctuation omitted.) *Sutherlin v. Sutherlin*, 301 Ga. 581, 582 (802 SE2d 204) (2017). While a trial court has "authority to interpret divorce decrees in deciding contempt issues placed before it," the inquiry on appeal "is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." (Citation and punctuation omitted.) *Johnston v. Johnston*, 281 Ga. 666, 667 (641 SE2d 538) (2007). "It is the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Roquemore v. Burgess*, 281 Ga. 593, 595 (642 SE2d 41) (2007).

In this case, the trial court declined to find the husband in contempt in connection with the disposition of the marital home, but nonetheless crafted a remedy to address the dilemma caused by the mutual failure of the parties to list the home in June of 2017, as provided in their settlement agreement. As this presents a legal issue, we will apply a de novo standard of review. See *Borokantics v. Humphrey*, 344 Ga. App. 875, 877 (811 SE2d 523) (2018).

After reviewing the settlement agreement, we agree with the husband that it required the parties to list the marital home for sale and the trial court impermissibly modified the agreement by giving the wife the option to refinance the loan on the marital home over a period of three months. See *Sponsler*, 301 Ga. at 603-604 (2) (a) (trial court impermissibly modified terms of divorce decree by imposing requirement "directly contrary to the terms of the decree"). It also impermissibly modified the agreement when it gave the wife "final decision-making authority" over purchase offers when the agreement expressly provided that "[a]ll reasonable offers to purchase the home shall be accepted." See id.

Other portions of the trial court's order about which the husband complains do not directly conflict with the parties' agreement; instead, the trial court attempted to impose reasonable solutions for contingencies about which the agreement was silent. Specifically, it allowed the wife to select the realtor and gave the wife credit for mortgage principle payments made during her sole occupancy of the home. Georgia case law makes clear that a trial court cannot supply omissions in the parties' settlement agreement. See *Ramsey v. Ramsey*, 231 Ga. 334, 338 (2) (201 SE2d 429) (1973) (Omissions in a final divorce decree cannot later be supplied; the trial court must enforce the decree as written and cannot solve a problem that "was not

8

confronted . . . at the time the final decree was taken."). Accordingly, we conclude that the trial court improperly modified the agreement when it authorized the wife to select the realtor and ordered the husband to give the wife credit for mortgage principle payments.

2. In his remaining enumerations of error, the husband asserts that the trial court erred by requiring him to reimburse the wife $16,341.82 for repairs made to the marital residence. The trial court made the following findings with regard to repairs of the marital home:

> [The wife] did not present any specific documents evidencing which repairs were needed at the time of the parties' divorce in order to sell the home in June of 2017. In addition, there was no evidence presented as to which repairs had been paid for although [the wife]'s Exhibit #2 identifies $57,791.25 in repair costs incurred between 2018 and 2021. Further, [the wife] presented no invoices at trial nor any receipts for any repairs performed. The Court also notes that [the wife]'s father worked on the home, paid contractors, and assessed an amount due for his personal services and labor although such was never discussed with [the husband]. [The wife] produced photographs during trial purporting to be before and after photographs; however, there were no date stamps or time stamps on said photographs. It was unclear when these were taken.

Based on the foregoing, the Court cannot find [the husband] in willful contempt for his failure to reimburse [the wife] for repairs made to the marital residence. This is due in part to [the wife]'s failure to produce sufficient documentation and due in part to [the wife]'s testimony that she had not personally incurred any expenses for repairs to the residence. In fact, a great deal of the services were performed by [the wife]'s father, and the spreadsheet presented by [the wife] included charges for her father's gas, which she contends is an appropriate expense because he had to drive from his home in South Carolina to the marital residence in order to make repairs. In short, the Court has no manner in which to assess and/or trace back to determine the repairs that may have been needed in 2017. Had [the wife] secured the services of a home inspector and produced a report setting forth the repairs needed, the Court may have had a manner in which to calculate and apportion repair reimbursement.

The [husband] nevertheless acknowledged that he may owe a sum of money for his portion of the repair expenditures, and he further concedes that the value of the residence increased due to [the wife]'s efforts. Although the Court does not find [the husband] to be in willful contempt, it does find that it is reasonable to require [the husband] to reimburse [the wife] the sum of $16,341.82 for repairs made to the marital residence.

. . .

At the time of closing, if [the husband] has not reimbursed [the wife] for his portion of the repair costs as set forth in the preceding

paragraph, any remaining sum shall be deducted from his portion of the equity to satisfy this debt.

The husband contends that the trial court erred by requiring him to reimburse the wife for repairs not proven to be "necessary to get the [r]esidence listed for sale by June 2017," as specified in their settlement agreement. But, as pointed out by the trial court in its order, the husband's attorney acknowledged in the hearing that he might owe as much as $35,000 for repair expenditures. Specifically, counsel asserted

I'm sure you carefully listened to the evidence and I have carefully listened to the evidence, and there just was no evidence regarding what was needed in 2017. . . . So, you know, should he be held in contempt for not paying these things when she decided to live in the home after [not] selling the house that she had agreed to do? I don't think he can be held in contempt.

Now, is there an argument that he could benefit from the improvements that she has made? Absolutely. I agree. I think if she sells this house, she should get a chunk of money off the top and whatever is left is whatever is left and they need to split it.

So the question would become: What is that amount? And it's difficult because — I'm probably going to have to go back and look at it a little more closely and give you a number because I think some of these are patently unreasonable.

11

. . .

So I think, you know, she may be owed money, but I don't think that's the issue for today. The issue is whether or not he's in contempt for not paying it, and I don't think he is.

. . .

So I believe there is an argument to be made that, should she get paid the $35,000, sure. But that doesn't mean he's obligated to pay it. I think she should get it off the top in terms of equity. But she obviously needs to sell the home.

In light of the concessions made by the husband's counsel in the hearing, we conclude that he invited any error in the trial court's award of repair costs and is estopped from challenging it now. See *Sutherlin*, 301 Ga. at 588 (III). We therefore affirm this portion of the trial court's order.

*Judgment affirmed in part, and reversed in part. Barnes, P. J., and Hodges, J., concur.*