The record does not show conclusively and as a matter of law that the husband was unable to comply with the verdict and judgment requiring him to pay the sum of $6.50 per month as alimony for the support of his minor child; and consequently the order adjudging the defendant to be in contempt can not be disturbed by this court.
 No. 13137. MAY 15, 1940. REHEARING DENIED JUNE 14, 1940.
Mrs. Snider sued her husband, T. C. Snider, for divorce, temporary and permanent alimony and attorney's fees, and prayed that the custody of a minor child, Katherine, be awarded to her. On interlocutory hearing, the judge awarded $12 per month for support of the plaintiff and the minor child, and $25 as attorney's fees. The husband excepted, and the judgment was affirmed. Snider v. Snider, 182 Ga 592 (186 S.E. 562). Later, on application of the wife, the court issued a rule nisi, requiring the husband to show cause why he should not be attached for contempt for his failure to pay temporary alimony, as required by the previous order. The rule was made absolute, the husband again excepted, and this judgment was also affirmed.Snider v. Snider, 182 Ga. 701 (186 S.E. 723). The trial of the application for permanent alimony resulted in a verdict
disallowing alimony for the support of the wife, but finding against the husband and in her favor $6.50 per month for the support of the minor child. The wife's motion for *Page 382 
a new trial was overruled, and she excepted. The judgment refusing a new trial was affirmed. Snider v. Snider,183 Ga. 229 (187 S.E. 861). During the trial on the question of permanent alimony, the plaintiff's attorney made a motion for allowance of fees additional to the $25 previously awarded on the hearing for temporary alimony. To an order sustaining that motion the husband excepted, and the judgment was affirmed. Snider v.Snider, 183 Ga. 734 (189 S.E. 512). The case is now before this court for the fifth time. On August 10, 1939, Mrs. Snider again filed an application for an attachment for contempt, complaining that the husband had failed to pay the permanent alimony for the use of the child as fixed by the verdict and judgment. She alleged that the defendant was required to pay $6.50 per month for the support of the child, but that the payments were to be made quarterly on the 19th day of May, August, November, and February, and that he had failed to make the quarterly payment due on February 19, 1939, except that he had paid $1.50 of the amount due at that time, and that he had made no subsequent payments in any sum. A rule nisi was issued, and a response was filed. On the hearing the judge rendered a judgment making the rule for contempt absolute, and the husband excepted.
Paragraphs 2, 3, 4, and 5 of the application for the attachment alleged recovery of the judgment for alimony as stated, payments made and balance due, custody and support of the child by the applicant, request of the defendant for payment, and his ability to pay "if he would make the proper effort." Paragraph 5 alleged that "He has not been released from liability [for the payments] but is still liable for them." In paragraph 6 it was alleged that petitioner has been put to the expense of an attorney's fee of $10 "to have this petition brought for the collection of the amount now due her by defendant." Regarding all of these averments, the defendant alleged in his response: "That for want of sufficient information defendant can neither admit or deny the allegations contained in paragraphs two, three, four, five, and six of plaintiff's petition for order nisi." The response further alleged, among other things, that the defendant is unable to make the payments, owing to his poverty; that he is unable to do manual labor, as he is suffering with a hernia; and that he is uneducated and is not suited for any kind of work except manual labor. The response, although *Page 383 
introduced in evidence by the defendant, was not positively verified, the oath subscribed and attached thereto being simply that the facts stated therein were true and correct to the best of the respondent's knowledge, information, and belief.
At the hearing the defendant testified: "I am physically unable to do manual labor, on account of suffering from a hernia or rupture. I am very frail and delicate and only weigh 115 pounds. I am living in the house with my sister, Mrs. Mollie Ulm, and she is supporting me. I have not worked in several years, and I am not able to work at all. I am not earning anything at all, and have not for several years. I don't have a cent, and can't get it. I have tried to borrow money to pay this alimony, but I have no security to offer, and I can't borrow any. I don't own any property whatever, either real or personal, and have not owned any property for several years. I didn't intend any disrespect for the court in failing to pay the alimony, but my failure to pay is due wholly to my poyerty and inability to work." Cross-examination: "I didn't buy a horse at a public sale in Sandersville recently, but the man I was with did. I used to be a telegraph operator, but the railroad is `junked' now, and I can't get a job as telegraph operator. I have tried, but there are so many operators out of jobs that I can't get a job. If you think they are so easy to get, why don't you get me a job with the telegraph company so that I can pay this alimony? I am not able to work. I not only have a rupture, but I am suffering with low blood pressure. I did have some land about five years ago, but I owned so much that I deeded it to the person that I owed. I don't have any personal property at all — all of it was taken from me about four or five years ago under a mortgage foreclosure and sold before the court-house front door. I have a son that owns a little property, but he is twenty-three years of age and his own man. My sister has been paying alimony for me, but she has quit. She says she is having to support me, and that she is not paying any more alimony; that she has put all the money that she is going to in alimony. I stay around the house with her, but I can't work on account of my physical condition. I mean to say that I sit around the house all the time, and I don't work any on the farm; if I do anything at all it is running errands around the house. My son bought the Reese place in the last year or so, but I had nothing to do with his buying it. He paid very *Page 384 
little on it, if anything — he just took over a farm after Mr. Reese died, and agreed to pay the Federal Land Bank what Mr. Reese owned them. After my mother's death, I got a tract of land, not the tract next to Mrs. Sue Davis. When we separated I owned a house and lot in Matthews, Ga., and had already bought a tract of land near there, but owned some on the farm — never finished paying for it, so it went back. I bought a little land during the twenty years that we lived together, but I didn't suddenly lose it. I was broke when we separated, and just gave it up, as all of my personal property was taken from me and sold under a foreclosure; so I just deeded the land for what I owned."
The defendant introduced an affidavit of a physician, to the effect that on August 15, 1939, he examined the defendant and found his condition to be as follows: "Left inguinal hernia. Hypotension (mild degree). That the said Snider is wholly unable to do manual labor." The clerk of the superior court, as a witness for the defendant, testified that several years ago Mrs. Snider filed a suit against her husband and a sister, "in an effort to cancel some deeds that she alleged Mr. Snider had made in an effort to keep from paying alimony. Mrs. Snider was not able to cancel the deeds, and the deeds still stand." Mrs. Snider testified as follows: "It is strange that he can't pay any alimony. When we separated about five years ago he owned a house in Matthews, Ga., and a farm in Glascock Country — now he claims he has not got anything. I lived with him for twenty years and worked like a slave and didn't get anything when we quit, and now he won't pay the small amount that the jury ordered him to pay every month for the support of Katherine. Katherine is still with me, and I am supporting her. I have not released him from the payment of alimony — he is due the amounts that you have alleged to be due in the petition. The house in Matthews was a small house, but we lived in it. I hear that they have torn the house down now and moved it." Cross-examination: "What I am testifying about now, that is Mr. Snider's financial and physical condition, was his financial and physical condition at the time we separated about five years ago. I don't know anything about his physical and financial condition now. I don't know if he has low blood pressure or not, and I don't know whether he is able to work. I don't know what property he has now. I know that he had some property when we separated five *Page 385 
years ago, and I know that he could make us and did make us a living then. He made his sister a deed to the land, but I didn't file a suit and try to set the deeds aside and collect alimony." Redirect examination: "About a year after we were married, soon after our first baby was born, Mr. Snider bought a tract of land adjoining the home place, in Glascock County; later he bought a house and lot in Matthews; later, when Katherine was born, he bought a farm near Matthews in Jefferson County. Later, after his mother's death, in the division he got a tract of land adjoining his mother's home place. At the time we separated he owned two tracts of land in Glascock County and a house and lot and farm in Jefferson County. He did not owe anything on any of this property, except the farm in Jefferson County. Since our separation he sold the farm in Jefferson County; it was sold about four or five years ago to Mr. Pennington, and Mr. Snider swore in a former trial that he got $800. The deeds he made to his sister he claimed were made in March before we separated, but they were not put on record until the following November, just before the trial here for alimony, which Mr. Snider won, except support for the child. Mr. Snider was able to work before we separated five years ago, but was not so fond of it. He looks to be as able to work now as he was then. He looks now just like he did five years ago, except a little thinner in the face."
The judgment making the rule absolute recited that the evidence was substantially the same as that introduced on the previous trial for contempt (182 Ga. 701), and directed that the sheriff arrest and incarcerate the defendant until "he shall purge himself of contempt of court by paying all of said sums in arrears, or until the further order of this court."
Whether in view of other features of the response it might have been considered as evidence against the defendant (Code, §§ 38-402; 81-308; White Sewing Machine Co. v.Horkan, 7 Ga. App. 283 (2), 66 S.E. 811), it was not so verified as to have any probative value in his favor, although introduced in evidence by him. Byrd v. Prudential InsuranceCo., 182 Ga. 800 (187 S.E. 1); Grizzel v. Grizzel,188 Ga. 418 (2) (3 S.E.2d 649). The case may therefore, without harm to the defendant, be treated *Page 386 
as though the response was not introduced, and it will be so treated in the remainder of this opinion.
Proof by a husband of his inability to comply with a judgment for alimony is of course a good defense to a rule for contempt.Newsome v. Newsome, 155 Ga. 412 (117 S.E. 90); Lightfoot
v. Lightfoot, 149 Ga. 223 (99 S.E. 611); Porter v.Porter, 178 Ga. 784 (174 S.E. 527). "This does not mean that it is sufficient for the defendant to show merely that he has not money, or property which he might convert into money, with which to satisfy the alimony installments, but it must be made to appear clearly that he has in good faith exhausted all the resources at his command and has made a diligent and bona fide effort to comply with the order of the court." Reese v.Reese, 189 Ga. 314 (5 S.E.2d 777-778). The defendant testified that he is not "able to work at all," but the physician who examined him and whose affidavit was introduced in evidence stated only that he is unable to do manual labor. It can not be said, therefore, that the evidence showed conclusively that the defendant was physically unable to do any kind of work whatever, especially as he appeared before the court as a witness and the judge was thus afforded an opportunity to observe his appearance and to consider such mental and physical strength as he may have shown upon the trial. Compare Duke v. Duke, 157 Ga. 899,901 (122 S.E. 685); Rawlins v. State, 124 Ga. 31 (19) (52 S.E. 1); Brantley v. State, 133 Ga. 264 (4) (65 S.E. 426). The defendant testified that he used to be a telegraph operator, but that the railroad is "junked" now and he can not obtain employment in that line. He did not testify that he is unable to obtain any other kind of work. Mrs. Snider testified: He "was able to work before we separated five years ago, but was not so fond of it. He looks to be as able to work now as he was then. He looks now just like he did five years ago, except a little thinner in the face." Even if it be true that the defendant is unable to do "manual labor," it does not necessarily follow that there is no kind of work whatever that he might find and be able to do, for the purpose of supporting himself and contributing the small sum of $6.50 per month toward the support of his own minor daughter, as a jury of his peers concluded he should do. In all the circumstances, this court can not say that the trial judge was bound to find that he had in good faith exhausted all the resources at his command or *Page 387 
had made a diligent and bona fide effort to comply with the order of the court. See, in this connection, Lester v. Lester,63 Ga. 356; Scruggs v. Scruggs, 184 Ga. 853 (193 S.E. 865);Banks v. Banks, 188 Ga. 181 (3 S.E.2d 717).
In reaching this conclusion, we do not deem it necessary to consider whether the evidence of the wife as to the financial
condition of the husband as it existed several years previously tended in any manner to rebut his contention as to present poverty; nor do we determine the effect of the judge's statement that "there is no material difference between the evidence adduced in the case above cited [182 Ga. 701] and the case now before the court." But see Briesnick v. Briesnick, 100 Ga. 57
(28 S.E. 154). Regardless of these questions, the judgment making the rule absolute appears to have been authorized. As to finality of the judgment as against future modification, seePotter v. Potter, 145 Ga. 60, 65 (88 S.E. 546); Blair v.Blair, 166 Ga. 211 (142 S.E. 743); Reynolds v. Reynolds,150 Ga. 667 (104 S.E. 638), and especially Poole v.Wright, 188 Ga. 255 (2) (3 S.E.2d 731).
Judgment affirmed. All the Justices concur, except Duckworth,Justice, who dissents.