S09A1623. DARROCH v. WILLIS.
(690 SE2d 410)

NAHMIAS, Justice.

This appeal involves a contempt order arising from a 2007 divorce decree. The decree required Robert Malcolm Darroch to remove Donna Overholt Willis's name from the mortgage on the marital residence within 30 days of remarrying. Darroch remarried on August 10, 2008, but he did not remove Willis's name from the mortgage. On March 6, 2009, the trial court held Darroch in contempt of court and ordered him to purge the contempt either by completing a pending refinancing or by listing the marital residence for sale and accepting any cash offer for at least 95% of the list price. We granted Darroch's application for discretionary appeal.

We affirm the trial court's finding that Darroch was willfully in contempt of the divorce decree. We conclude, however, that the trial court's requirement that Darroch sell the house if he did not refinance it constituted an improper modification of the decree's property division awarding ownership of the house to Darroch. Accordingly, although the trial court's alternatives for enforcing the

divorce decree may prove more onerous to Darroch than the contempt remedy the trial court crafted, we must reverse the court's contempt judgment to the extent that it requires the sale of the marital residence.

1. Willis and Darroch were married on June 26, 1993. The couple separated in May 2007, and on August 23, 2007, they entered into a marital dissolution agreement (MDA) that was incorporated into a September 24, 2007 divorce decree. Among the assets that were divided in the MDA, Paragraph 3 (B) provided that Darroch would have "exclusive ownership" of the marital residence subject to an existing mortgage on which Darroch and Willis were joint obligors. Darroch agreed to assume responsibility for the mortgage and to remove Willis as a co-obligor within 30 days of the earlier of either: (1) his remarriage or cohabitation with anyone other than a relative; or (2) the point at which he was able to refinance the mortgage at a rate equal to or less than the current rate.[1] Paragraph 7 of the MDA required the parties to "execute all documents, perform all acts and do all things necessary . . . to effectuate any of the provisions and conditions set forth in this Agreement."

In the 11 months after the divorce decree was entered, Darroch did not refinance the mortgage. Darroch then remarried on August 10, 2008. Just five days before the wedding, he made his first inquiry into the process for refinancing the mortgage to remove Willis as a co-obligor. Darroch did not refinance the mortgage or otherwise remove Willis's name by the September 9, 2008 deadline set in the divorce decree, even though he received offers for refinancing from both Bank of America and Brightpath Mortgage, LLC. Six weeks later, Darroch still had not removed Willis's name from the mortgage, and Willis filed a motion for contempt. Darroch answered and filed a cross-motion for contempt, which he later withdrew. On February 5, 2009, six months after Darroch remarried, the trial court conducted a contempt hearing. Both Darroch and Willis testified.

At the contempt hearing, Darroch essentially pled procrastination and requested more time. Darroch explained that he had arranged to borrow money from his father to pay down the mortgage to the point that he could refinance the balance, thereby removing Willis's name from the mortgage. He testified that he was in the

---

[1] Paragraph (3) (B) provided in relevant part as follows:

[Darroch] shall monitor interest rates at least every six months and as soon as [Darroch] is able to obtain a first mortgage secured by the property at an interest [rate] equal to or less than the rate charged on the existing first mortgage he shall refinance said first mortgage within thirty (30) days. Regardless of [the] interest rate available, [Darroch] must remove [Willis's] name from the first mortgage or refinance it at his expense within thirty (30) days upon cohabiting with someone other than a relative or upon remarrying.

process of refinancing the mortgage through Bank of America, that December and January closing dates had been unavoidably delayed, and that the closing was now set for the week following the contempt hearing. Darroch's counsel further assured the trial court that Darroch "expects that loan to close [at] that time and then the refinance to be complete," and that there was therefore nothing the court needed to do to ensure compliance with the divorce decree.

At the end of the hearing, the trial court directed Willis's attorney to prepare an order holding Darroch in contempt of court for failing to remove Willis's name from the mortgage as required by the divorce decree and giving him 30 days to close on the pending Bank of America refinancing. The trial court instructed that the order would provide that if the refinancing did not close within 30 days of the hearing, then "the default provision would be to proceed to put the house up for sale." The trial court expressed hope that the mortgage "will be refinanced and that won't be necessary."

Darroch did not refinance the mortgage the following week or at any time within the next 30 days. Accordingly, on March 6, 2009, the trial court entered a written order in accordance with its prior directive, nunc pro tunc to the date of the February 5 hearing, holding Darroch in willful contempt of court for violating the provision of the divorce decree requiring him to remove Willis's name from the mortgage within 30 days of remarrying. The court ordered Darroch to purge the contempt by taking immediate steps to refinance the mortgage and directed that if Darroch had not refinanced the mortgage by March 7, 2009, he must immediately list the house for sale with a real estate broker selected by Willis at the price specified in a new appraisal to be paid for by Darroch. Darroch was ordered to cooperate with the listing agent in marketing the property and to pursue the sale in a good faith and expeditious manner. Finally, the contempt order required Darroch to accept any cash offer for at least 95% of the list price, but the order also included a provision allowing him to avoid the forced sale at any time by refinancing the mortgage.

2. Darroch contends there was no evidence of willful contempt on his part. However, if there is any evidence to support a trial court's determination that a party has willfully disobeyed its order, the finding of contempt will be affirmed on appeal. See *Killingsworth v. Killingsworth*, 286 Ga. 234, 237 (686 SE2d 640) (2009). In essence, Darroch is attempting to raise an inability to pay defense. But Darroch did not raise this argument in his answer to the contempt motion, and the transcript is devoid of evidence that he lacked the ability to refinance the property. Instead, he testified that he was close to completing a refinancing. Moreover, Darroch presented no evidence showing that he was unable to remove Willis as a co-obligor

on the mortgage by any means before the deadline set in the divorce decree. He cannot blame the trial court for his decision to wait until five days before the wedding — an event whose timing he presumably had some control over — to begin inquiring into the possible avenues for removing Willis's name from the mortgage and complying with the clear terms of the decree.

Inability to pay is a defense only where the contemnor demonstrates that he has exhausted all resources and assets available and is still unable to secure the funds necessary to enable compliance with the court's order. He must show "clearly that he has in good faith exhausted all the resources at his command and has made a diligent and bona fide effort to comply with the order of the court," *Snider v. Snider*, 190 Ga. 381, 386 (9 SE2d 654) (1940) (citation and punctuation omitted), and that he cannot borrow sufficient funds to comply with the obligation, see *Weiner v. Weiner*, 219 Ga. 44, 44 (131 SE2d 561) (1963).

Darroch admitted he has other financial assets, such as his 401 (k), that he had not investigated using, and he acknowledged his ability to borrow significant sums of money from his father that would enable him to refinance the mortgage. Other evidence showed that Darroch could borrow against his equity line of credit and that he is an attorney with a high income generally exceeding half a million dollars a year. Finally, as discussed further below, Darroch might sell his house to generate the funds needed to comply with the divorce decree. Darroch initially tried to delay his obligations and then made only cursory efforts to refinance, failed to actively pursue applications, failed to provide requested information to potential lenders, and generally behaved in a dilatory fashion. Refinancing at a higher interest rate or on other less favorable terms might negatively affect his finances, but that was a clearly foreseeable risk he undertook in agreeing to the terms of the divorce decree that required him to remove his ex-wife's name from the mortgage not only if interest rates went down but also if he chose to remarry. The contempt order was not entered until March 6, 2009, well past the alleged February 15, 2009 closing date about which Darroch testified at the contempt hearing.

There was therefore ample evidence to support the trial court's finding that Darroch willfully disobeyed the divorce decree.

3. Darroch contends that the trial court impermissibly modified the divorce decree by requiring him to sell the marital residence if he could not refinance it to remove Willis's name from the mortgage. We must agree.

" 'While the trial court has broad discretion to determine whether the [divorce] decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a

contempt proceeding to modify the terms of the agreement or decree.' " *Roquemore v. Burgess*, 281 Ga. 593, 594 (642 SE2d 41) (2007) (quoting *Dohn v. Dohn*, 276 Ga. 826, 828 (584 SE2d 250) (2003)). In other words, in response to willful contempt of a divorce decree, a trial court has broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced.

In this case, the trial court may have been led down the wrong path because, as the matter was presented to the court, there were only two ways Darroch could fulfill his obligation to remove Willis's name from the mortgage: (1) by refinancing the mortgage; or (2) by selling the house and paying off the mortgage. No other options were presented to the trial court to enforce the divorce decree, and indeed the possibility of selling the house to eliminate the mortgage was first mentioned by Darroch's counsel. The court decided to give Darroch a choice. He could still, seventeen months after the divorce decree and six months after flouting the specific deadline set by the decree, pursue his preferred method of removing Willis's name from the mortgage by refinancing it. But if he delayed any further, the court would require him to sell the house to accomplish the same end, albeit only if he received a cash offer for at least 95% of the list price.

The trial court's order, it may be noted, did not require Darroch to transfer any assets to Willis. The asset at issue — the house — would remain entirely his. What the court's order did require was that Darroch convert that asset from realty to cash, which in turn would allow him to do what the divorce decree unequivocally required him to do promptly upon remarrying, but what he had refused or otherwise been unable to do for more than six months — remove his ex-wife as a guarantor of the substantial debt associated with that asset. Darroch was not required to sell the house at all if he refinanced at any time before the sale closed, nor was he required to forfeit a large portion of the asset. Instead, the most he might lose would be 5% of the current fair market value (as determined through a new appraisal), and if the asset sold at more than 95% of the appraised price, Darroch would keep those proceeds. Finally, if Darroch were unable to refinance or convert the asset almost fully to cash, in order to fulfill the requirements of the divorce decree, the trial court's order would allow him to remain in contempt, potentially for an extended period.

The trial court's efforts to compel Darroch to purge his contempt by selling the house, if necessary, might therefore be seen as creative and reasonable. Nevertheless, the court's order violates the firm rule we have established against modifying the property division provisions of a final divorce decree. Those provisions equitably divide marital property between the parties, and we have not allowed trial

courts later to compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with some other provision of the decree. See, e.g., *Spivey v. McClellan*, 259 Ga. 181, 182 (378 SE2d 123) (1989) ("Fixed allocations of economic resources between spouses, those that are already vested or perfected, are not subject to modification by the court. . . ."); *Smith v. Smith*, 281 Ga. 204, 206-207 (636 SE2d 519) (2006) (improper modification where trial court, among other things, nullified awards of stock made in divorce decree). While from a purely economic standpoint it may not be unreasonable to require a contemnor to convert an asset awarded to him or her in a divorce decree into another asset of similar value, many assets specifically awarded in a property division — homes certainly among them — often mean much more to the recipient than the equivalent value in cash, and trial courts cannot alter the allocations agreed to by the parties and otherwise embedded in the original judgment.

Indeed, one of our recent decisions on this issue effectively controls this case. In *Roquemore v. Burgess*, the divorce decree awarded exclusive ownership of the marital residence to Roquemore while also requiring him to pay Burgess $15,000. See 281 Ga. at 593. More than three years later, after finding Roquemore in contempt for failing to pay the $15,000, the trial court ordered him to sell the house for at least 95% of its appraised value in order to generate the funds to pay Burgess. See id. at 593-594. We reversed the contempt order, explaining that "[t]here is no explicit requirement in the agreement that Roquemore sell the home" and "[s]everal parts of the agreement are at odds with the assumption the parties intended the house be sold." Id. at 594. We therefore concluded that the trial court's directive that Roquemore sell the house "amounted to a modification of the decree, not an interpretation." Id. at 595.

Similarly, the divorce decree in this case specifically awarded "exclusive ownership" of the marital home — not just an asset of the same value as the home — to Darroch, and nothing in the decree explicitly or implicitly required him to sell the house to satisfy the condition that he remove Willis's name from the mortgage. To the contrary, the agreement suggests that Darroch would continue to occupy and bear the expenses associated with maintaining the residence. The trial court therefore was not authorized to require Darroch to sell the house that he had been awarded to satisfy another component of the decree. See *Roquemore v. Burgess*, 281 Ga. at 595.

Our ruling does not mean that the trial court is left with no effective means of enforcing the divorce decree. The court might order Darroch to pay Willis a significant sum every day until he purges his contempt. See *Chatfield v. Adkins-Chatfield*, 282 Ga. 190,

192-194 (646 SE2d 247) (2007) (affirming contempt order directing husband to pay $14,593 due to wife plus $1,500 for each day that passed until that amount was paid, noting that the $500 limit for fines under OCGA § 15-6-8 (5) applies only to criminal contempt and not sanctions imposed for civil contempt). Or the trial court could incarcerate Darroch until he purges his contempt, see *Taylor v. Taylor*, 248 Ga. 723, 723 (285 SE2d 695) (1982) — an experience that a lawyer who makes a half million dollars a year would likely find to be very unpleasant and expensive and a particularly strong incentive to comply with the divorce decree.

Darroch may indeed find the purge conditions imposed by the trial court on remand to be far more draconian than those imposed by the order he has successfully appealed. If he truly cannot refinance the house, he might then turn to the one other readily apparent method of purging his contempt — selling the house (perhaps at much more than a 5% loss) to remove Willis's name from the mortgage. If that happens, however, it will be based upon Darroch's decision to take that action with the house specifically awarded to him in the divorce decree, rather than the trial court's impermissible direct modification of that component of the decree's property division.

*Judgment reversed. All the Justices concur, except Hunstein, C. J., who concurs in the judgment only.*

DECIDED MARCH 1, 2010.

*Warner, Mayoue, Bates & McGough, Barry B. McGough, Elinor H. Hitt*, for appellant.

*Segal, Fryer, Shuster & Lester, William R. Lester*, for appellee.