**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 2, 2018**

# In the Court of Appeals of Georgia

A17A1537. BOROTKANICS v. HUMPHREY.

REESE, Judge.

Jeremy Borotkanics appeals from a court order finding him in contempt of his divorce decree.[1] He contends that the trial court impermissibly modified the divorce decree and improperly awarded attorney fees and litigation expenses. For the reasons set forth, infra, we affirm in part, reverse in part, vacate in part, and remand this case with direction.

The record shows the following undisputed facts. Borotkanics and his former wife, Theresa Humphrey, divorced in November 2012. The final divorce decree

---

[1] We granted Borotkanics's application for discretionary review. Pursuant to the Appellate Jurisdiction Reform Act of 2016, the Court of Appeals has appellate jurisdiction over divorce and alimony cases where, as here, the application was filed on or after January 1, 2017. OCGA § 15-3-3.1 (a) (5); see Ga. L. 2016, p. 883, § 6-1 (c) (effective date).

incorporated a settlement agreement that had been executed by the parties. In March 2016, Humphrey filed a petition for contempt, asserting that Borotkanics had failed to comply with the following real property division provision of the settlement agreement:

> [Borotkanics] shall retain the marital home located [on] James Ridge Lane, Stockbridge, Georgia and the property located [on] Mount Tabor Church Road, Dallas, Georgia. [Humphrey] agrees to execute a Quit Claim Deed to [Borotkanics] for each property[.] . . . [Borotkanics] shall refinance both marital properties into his own name and thus remov[e] [Humphrey's] name from the mortgages before February 16, 2013.

According to Humphrey, Borotkanics failed to refinance the mortgage on either property despite his ability to do so, as evidenced by the fact that he had purchased other properties in 2013, after the divorce decree was final. Humphrey asked the trial court to find Borotkanics in wilful contempt of the divorce decree and to incarcerate him in the county jail until he purged himself from his contemptuous conduct. She also sought attorney fees and litigation expenses.

The trial court conducted an evidentiary hearing, then entered an order finding Borotkanics in wilful contempt. The court ruled that

> [Borotkanics] may purge himself from this contemptuous conduct by immediately placing the real property [on James Ridge Lane,

2

Stockbridge] on the market for sale. [Borotkanics] is to allow [Humphrey] by and through her counsel of record . . . to select a certified real estate broker. The real estate broker will appraise the property . . . and determine the list price of the property. . . . The first offer made to [Borotkanics] for the purchase of said property amounting to 95% of the list price will be accepted by [Borotkanics]. If there is no offer made of 95% of the list price within the first six (6) months of listing the property for sale, the list price will be reduced by 10%.

The trial court also ordered Borotkanics to "pay as a sanction for contempt the sum of $3,613.91 in attorney fees and litigation expenses to [Humphrey] and $1,000.00 to [Humphrey's] attorney[.] This amount shall be paid from the proceeds of the sale of the real property at the closing." This appeal followed.[2]

It is axiomatic that, on appellate review, we "must affirm a trial court's adjudication of contempt so long as there is 'any evidence' to support it."[3] On the other hand, this Court reviews a trial court's rulings on legal issues de novo.[4] With

---

[2] See footnote 1, supra.

[3] *Jones v. Jones*, 298 Ga. 762, 767 (1) (787 SE2d 682) (2016) (citations omitted).

[4] See *Colbert v. Colbert*, 321 Ga. App. 841 (1) (743 SE2d 505) (2013) ("When a question of law is at issue, . . . we review the trial court's decision de novo.") (footnote omitted).

these guiding principles in mind, we turn now to Borotkanics's specific claims of error.

1. As an initial matter, Humphrey argues that, due to Borotkanics's failure to provide this Court with a transcript of the contempt hearing, we must assume that the court's order was supported by evidence and, therefore, affirm the order.[5] We agree in part.

(a) On the factual issue of whether Borotkanics was in wilful contempt of the settlement agreement, we must assume that the evidence presented supported the trial court's conclusion and affirm that finding.[6]

(b) In contrast, as shown in Division 2, infra, the primary issues on appeal are purely legal issues, i.e., whether the trial court's order constituted a modification of

---

[5] See *Martinez v. Martinez*, 301 Ga. App. 330, 332-333 (2) (687 SE2d 610) (2009) ("In order for the appellate court to determine whether the judgment appealed from was erroneous, it is the duty of the appellant to include in the record those items which will enable the appellate court to perform an objective review of the evidence and proceedings. Thus, where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm.") (citations and punctuation omitted); *Collier v. D & N Trucking Co.*, 273 Ga. App. 271, 272 (614 SE2d 801) (2005) (In the absence of a transcript of the proceedings below, we must assume that the trial court's findings of fact were supported by the evidence.).

[6] See *Collier*, 273 Ga. App. at 272.

the divorce decree and, if so, whether the court was authorized to make such a modification as a sanction for contempt under the circumstances presented. Moreover, because the facts necessary to conduct a de novo review of these legal issues are undisputed and are part of the record, the absence of a hearing transcript does not hamper our review.

2. Borotkanics contends that, because the divorce decree did not require him to sell the marital home if he failed to comply with his obligation to refinance the mortgage, the court's order to sell that property amounts to an impermissible modification of the divorce decree.

> While the trial court has broad discretion to determine whether the divorce decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a contempt proceeding to modify the terms of the agreement or decree. In other words, in response to [wilful] contempt of a divorce decree, a trial court has broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced.[7]

Thus, even though a sanction for contempt may seem reasonable, it may nevertheless violate

---

[7] *Darroch v. Willis*, 286 Ga. 566, 569-570 (3) (690 SE2d 410) (2010) (citations and punctuation omitted).

5

the firm rule . . . against modifying the property division provisions of a final divorce decree. Those provisions equitably divide marital property between the parties, and [the Supreme Court of Georgia has] not allowed trial courts later to compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with some other provision of the decree. While from a purely economic standpoint it may not be unreasonable to require a contemnor to convert an asset awarded to him or her in a divorce decree into another asset of similar value,[8] many assets specifically awarded in a property division - homes certainly among them - often mean much more to the recipient than the equivalent value in cash, and trial courts cannot alter the allocations agreed to by the parties and otherwise embedded in the original judgment.[9]

---

[8] See, e.g., *Cason v. Cason*, 281 Ga. 296, 297-298 (1) (637 SE2d 716) (2006) (A final divorce decree awarded the wife an interest in an equity account that was subsequently converted to common stock and cash. When the husband refused to transfer the stock and cash to the wife for her portion of the account, the trial court calculated the value of the wife's interest in the equity account and awarded the equivalent amount to her in stock and cash. The Court concluded that this was a "reasonable clarification [of the settlement agreement,] because it was consistent with the intent and spirit of the final decree," adding that "[t]o rule otherwise would leave [the] wife with an illusory or meaningless asset.") (citation omitted).

[9] *Darroch*, 286 Ga. at 570-571 (3) (citations omitted).

6

The undisputed facts in this case are comparable to those found in *Darroch v. Willis*[10] and *Roquemore v. Burgess*.[11] In *Darroch*, the Supreme Court of Georgia held that the trial court impermissibly modified the divorce decree in a contempt proceeding, by requiring the former husband to sell the marital residence if he could not refinance the debt to remove his former wife's name from the mortgage.[12] Similarly, in *Roquemore*, the Supreme Court held that the trial court impermissibly modified the divorce decree in a contempt proceeding by requiring the former husband to sell the marital residence so as to generate funds to pay his former wife the $15,000 that he owed her in consideration for her relinquishment of her interest in the residence and other property.[13] As the Court noted, the fact that the settlement agreement gave the former husband different options on how to obtain the money to pay the debt contradicted the trial court's finding that the agreement required the former husband to sell the house in order to pay his former wife from the proceeds.[14]

---

[10] Id. at 569-572 (3).

[11] 281 Ga. 593 (642 SE2d 41) (2007).

[12] *Darroch*, 286 Ga. at 569-572 (3).

[13] *Roquemore*, 281 Ga. at 595.

[14] Id.

7

Based upon this precedent and the facts presented in this case, we conclude that the trial court's order constitutes an improper modification of the parties' divorce decree. Consequently, we reverse the court's contempt judgment to the extent that it requires Borotkanics to sell the marital home on James Ridge Lane in Stockbridge.

However, just as the Supreme Court noted in *Darroch*, the ruling in the instant case

> does not mean that the trial court is left with no effective means of enforcing the divorce decree. The court might order [Borotkanics] to pay [Humphrey] a significant sum every day until he purges his contempt. Or the trial court could incarcerate [Borotkanics] until he purges his contempt[.[15]] . . . [Borotkanics] may indeed find the purge conditions imposed by the trial court on remand to be far more draconian than those imposed by the order he has successfully appealed. If he truly cannot refinance the house, he might then turn to the one other readily apparent method of purging his contempt - selling the house . . . to remove [Humphrey's] name from the mortgage. If that happens, however, it will be based upon [Borotkanics's] decision to take that action with the house specifically awarded to him in the divorce decree, rather than the

---

[15] Notably, Humphrey did not ask the court to order Borotkanics to sell any real property but, instead, asked the court to incarcerate him until he complied with the divorce decree.

8

trial court's impermissible direct modification of that component of the decree's property division.[16]

Alternatively, Borotkanics could choose to sell the property on Mount Tabor Church Road in Dallas, which would not only remove Humphrey's name from that mortgage (as required by the divorce decree), but may also give Borotkanics the financial liquidity required to refinance the marital home. And, if that action does not suffice, Borotkanics could avoid other sanctions for his wilful contempt by selling one or more properties that he acquired after the divorce in order to accomplish the necessary debt refinancing.

Ultimately, we find that Borotkanics has two choices: take whatever measures are necessary to comply with the refinancing provision to which he agreed in 2012, or deal with whatever allowable sanctions the trial court may impose for him to purge himself of his wilful contempt.

3. Borotkanics challenges the grant of attorney fees and litigation expenses, pointing out that Humphrey's motion cited no statutory basis and the trial court's order neither identified a statutory basis nor included any findings of fact. According to Borotkanics, both OCGA §§ 19-6-2 and 9-15-14 are plausible statutory bases for

---

[16] *Darroch*, 286 Ga. at 571-572 (3).

9

the award of attorney fees in this case.[17] We agree. Consequently, we vacate the award of attorney fees and expenses and remand this case for the trial court to identify the statutory basis for the award and to include the requisite findings of fact supporting the award.[18]

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Miller, P. J., and Doyle, P. J., concur.*

---

[17] See *Cason*, 281 Ga. at 299-300 (3) ("OCGA § 19-6-2 authorizes a court, within its discretion, to award attorney fees in a contempt of court action arising out of a divorce case; however, the court is to consider the financial circumstances of both parties in assessing such an award. . . . Alternatively, OCGA § 9-15-14 (b) authorizes a court to award attorney fees if it finds that a party brought or defended an action, or any part thereof, that lacked substantial justification or was interposed for delay or harassment, or if it finds that a party unnecessarily expanded the proceeding by other improper conduct. An order awarding attorney fees under OCGA § 9-15-14 must include findings of conduct that authorize the award.") (citations and punctuation omitted).

[18] See *Leggette v. Leggette*, 284 Ga. 432, 433 (2) (668 SE2d 251) (2008) (determining in an appeal from a final divorce decree that the award for attorney fees had to be reversed and the case remanded for an explanation of the statutory basis for the award and for any findings necessary to support it, where movant contended at hearing that attorney fees were justified under both OCGA §§ 19-6-2 and 9-15-14, and trial court did not specify whether it was awarding fees under OCGA § 19-6-2 or OCGA § 9-15-14 and did not make any findings in support of its award); *Cason*, 281 Ga. at 300 (3) (concluding in an appeal from a contempt order awarding attorney fees that "the issue of attorney fees must be remanded for an explanation of the statutory basis for the award and any findings necessary to support it," where both OCGA §§ 19-6-2 and 9-15-14 were plausible bases, yet the trial court failed to make findings sufficient to support such an award under either section).