**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 20**, 2025

# In the Court of Appeals of Georgia

A25A0218. SAINT-ALBIN v. EUBANKS.

HODGES, Judge.

Diego Huot de Saint-Albin (the "husband")[1] appeals from a trial court order finding him in contempt in this domestic relations case. He contends that the trial court impermissibly modified the parties' divorce decree and improperly awarded interest and attorney fees. For the reasons that follow, we reverse in part, vacate in part, and remand the case with direction.

The record shows the following undisputed facts. The husband and Meredith Quinn Eubanks (the "wife"), were married in April 2009 and are the parents of two

---

[1] The record also refers to the husband as Diego Hout de Saint-Albin. This opinion uses the spelling in the motion for citation of contempt, hearing, court order, and notices of appeal.

minor children. On September 9, 2019, the parties were divorced by a final judgment and decree of divorce incorporating the parties' settlement agreement. Pursuant to the settlement agreement,[2] the husband was awarded certain unencumbered property, including the residence located at 2497 Rutherford Place, Atlanta, Georgia, and the Digit System International, LLC property located at 2030 Main Street, Atlanta, Georgia. In the settlement agreement, the husband agreed to pay $4,441.67 in alimony for 120 months, $55,000 as the equitable division of property, child support, and certain child-related medical and extracurricular costs. The husband did not make the payments as directed.

In June 2023, the parties entered into a consent order that, among other things, found the husband in contempt and ordered him to pay $250,000 to the wife under a specified payment schedule in addition to monthly alimony payments. The order did not alter the original award of property to the husband, and it specifically noted that "[a]ny terms of the parties' original Final Order of Divorce including their Settlement

---

[2] Although a copy of the original divorce decree and settlement agreement does not appear to be included in the record on appeal, the parties are not disputing the essential elements of that agreement.

Agreement which have not been specifically changed or modified herein shall remain in effect."

On September 13, 2023, the wife filed a motion for contempt, alleging that the husband had failed to pay a total of $61,764 for his portion of the children's medical expenses and extracurricular activities, as well as the scheduled arrearage payment and alimony agreed to in the June 2023 consent order. In January 2024, the wife amended her motion for contempt, updating the amount owed by the husband to $167,955.55. The parties attended mediation on January 31, 2024, and the husband agreed that he owed the wife $167,955.16, not including interest or attorney fees, under the June 2023 consent order. In a February 1, 2024 temporary consent order on contempt, the trial court noted that the husband was in the process of refinancing the property located at 2030 Main Street, Atlanta, Georgia, and closing on that property was expected to take place no later than February 16, 2024. According to the order, the parties agreed "that at closing the proceeds from the refinancing totaling $167,955.16 shall be paid directly" into an account for the wife's benefit.

On March 26, 2024, the wife again amended her motion for contempt, claiming the husband owed the original $167,955.55 plus an additional $67,799.19 since the

entry of the February 1, 2024 temporary order. The motion also alleged that the husband "failed to provide adequate paperwork to the lender so as to close on the [Main Street property] loan and is willfully refusing to close the loan so as to avoid payment of the amounts due to [the wife]." Following a hearing, the trial court entered a May 29, 2024 order finding the husband in willful contempt of the June 2023 consent order and awarding interest and attorney fees. The court's order noted that the husband owns two properties, both of which are unencumbered and together contain a total value over $800,000, but the husband had not looked into selling them since the contempt action was filed in September 2023. The court found the husband's claims that he could not sell the property without merit and "ordered[,]" among other things, for the husband "to do the following *instanter*:"

> b. Place on the Real Estate market for sale the property located at 2030 Main Street Northwest #305, Atlanta, GA 30318. This property is valued at $571,500 and Respondent shall take any and all reasonable offers for the purchase of the property so that the sale of the property shall not be unreasonably upheld.

> c. Place on the Real Estate market for sale the residence and adjacent land located at 2497 Rutherford Place, NW, Atlanta, GA 30318. This property is valued at $300,000.00 according to Respondent's testimony

and Respondent shall take any and all reasonable offers for the purchase of the property so that the sale of the property shall not be unreasonably upheld. (Emphasis in original.)

The court directed that upon the sale of the properties, the husband needed to place $214,400 in escrow to pay his tax liability to the IRS, and then use the remaining proceeds to pay a total due of $247,667.86 to the wife. The order stated that the husband "shall certify to the Court that he has listed the properties for sale no later than May 31, 2024. Failure to . . . so certify may result in a further finding of contempt and incarceration until this [c]ourt's orders have been obeyed."

We granted the husband's application for a discretionary appeal from the court's May 29, 2024 order, and this timely appeal followed.

"It is axiomatic that, on appellate review, we must affirm a trial court's adjudication of contempt so long as there is 'any evidence' to support it. On the other hand, this Court reviews a trial court's rulings on legal issues de novo." *Borotkanics v. Humphrey*, 344 Ga. App. 875, 877 (811 SE2d 523) (2018). With these standards in mind, we turn to the husband's specific claims of error.

1. The husband first asserts that the trial court erred in modifying the terms of the parties' original divorce decree and settlement agreement to create a remedy for

contempt. Specifically, the husband argues that because the divorce decree awarded him the two properties at issue unencumbered, the trial court impermissibly modified the decree by requiring him to sell the properties to fulfill his monetary obligations to the wife. We must agree.

It is well settled that while a court can craft a remedy for contempt, it cannot modify a final decree of divorce on a motion for contempt. *Ziyad v. El-Amin*, 293 Ga. 871, 871-872 (750 SE2d 337) (2013). "In other words, in response to willful contempt of a divorce decree, a trial court has broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced." *Darroch v. Willis*, 286 Ga. 566, 570 (3) (690 SE2d 410) (2010). Specifically, both our Supreme Court and this Court consistently have held that in crafting a remedy for contempt, a trial court may not compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with or satisfy other provisions in the decree. *Doane v. LeCornu*, 289 Ga. 379, 381-382 (1) (711 SE2d 673) (2011) (finding trial court erroneously ordered husband to sell a lake house to pay the wife); accord *Darroch*, 286 Ga. at 571 (3); *Stone v. Stone*, 358 Ga. App. 231, 233-

234 (854 SE2d 570) (2021). To do so amounts to a modification, rather than an interpretation, of a prior order, which we must reverse. *Roquemore v. Burgess*, 281 Ga. 593, 595 (642 SE2d 41) (2007). As our Supreme Court has stated:

> While from a purely economic standpoint it may not be unreasonable to require a contemnor to convert an asset awarded to him or her in a divorce decree into another asset of similar value, many assets specifically awarded in a property division — homes certainly among them — often mean much more to the recipient than the equivalent value in cash, and trial courts cannot alter the allocations agreed to by the parties and otherwise embedded in the original judgment.

*Darroch*, 286 Ga. at 571 (3); accord *Borotkanics*, 344 Ga. App. at 876, 878-879 (2).

In this case, it is undisputed that the parties' divorce decree and incorporated settlement agreement awarded the two properties at issue to the husband, unencumbered. In addition, there is no evidence in the record that the decree required the husband to sell these properties if he failed to comply with any other obligations listed in the settlement agreement. Thus, under the circumstances presented in this contempt proceeding, the trial court's May 2024 order requiring the husband to sell the two properties awarded solely to him in the divorce decree constitutes an impermissible modification of the divorce decree. See *Doane*, 289 Ga. at 381 (1)

7

(holding that it was error for a trial court to order the husband, who had been awarded the house in the divorce settlement agreement, to sell the house in order to pay the wife what he owed for her interest in the property and other missed payments); *Roquemore*, 281 Ga. at 595 (holding that the trial court impermissibly modified the divorce decree in a contempt proceeding by requiring the former husband, who was awarded exclusive ownership of the marital residence, to sell the residence so as to generate funds to pay his former wife money that he owed her in consideration for her relinquishment of her interest in the residence and other property).

The wife argues that the original 2019 divorce decree and settlement agreement are no longer relevant because the parties entered into the June 2023 and February 2024 consent orders, and the trial court's May 2024 order requiring the husband to sell his properties does not impermissibly modify these subsequent consent orders. According to the wife, the trial court merely clarified the consent orders so as to carry out the intent, letter, and spirit of the parties' agreements. These arguments are not persuasive.

First, we note that the wife's reliance on *Cason v. Cason*, 281 Ga. 296, 298 (637 SE2d 716) (2006), and its equivalent assets analysis to support her argument that the

trial court properly carried out the parties' intent and did not modify the divorce decree is misplaced. As this Court stated in *Stone*, where we held that a trial court erroneously modified a divorce decree by requiring the parties to sell the marital residence, "the *Cason* decision did not address the forced sale of a marital asset awarded to a particular party in a divorce decree." 358 Ga. App. at 233.

Second, the June 2023 consent decree, while setting new deadlines that detailed a payment schedule and amounts for the husband to pay, explicitly stated that "[a]ny terms of the parties' original Final Order of Divorce including their Settlement Agreement which have not been specifically changed or modified herein shall remain in effect." The June 2023 consent order did not change or modify the original, unencumbered award of the two properties at issue to the husband. In addition, although the February 2024 temporary consent order indicated that (i) the husband agreed to the amount he owed the wife, (ii) the husband was in the process of refinancing the property located at 2030 Main Street and expected that closing to occur by February 15, 2024, and (iii) the parties agreed that the proceeds from the refinancing would be paid into an account for the wife's benefit, none of this language changed or modified the original, unencumbered award of the two properties at issue

to the husband. While the husband may have "contemplated" using the 2030 Main Street property to pay the wife what he owed, even if he had agreed to absolutely refinance the 2030 Main Street property, rather than merely attempt to refinance the property, such an agreement does not authorize the trial court to require the husband to sell that property, and it clearly does not authorize the trial court to require the husband to sell the 2497 Rutherford Place property. In fact, our Supreme Court found this exact situation impermissible in *Darroch*, supra.

In *Darroch*, the divorce decree gave the husband "exclusive ownership" of the marital residence but required the husband to remove the wife's name from the marital residence mortgage within 30 days of remarrying. 286 Ga. at 566, 567 (1). The husband failed to do so, admitting the failure and testifying that he was in the process of refinancing the mortgage and the closing was set for a certain date. Id. at 567-568 (1). The trial court found the husband in contempt and ordered that he purge the contempt by either refinancing the mortgage or listing the marital residence for sale. Id. at 566, 568 (1). The Supreme Court concluded that "nothing in the decree explicitly or implicitly required [the husband] to sell the house to satisfy the condition that he remove [the wife's] name from the mortgage[,]" and "[t]he trial court

therefore was not authorized to require [the husband] to sell the house that he had been awarded to satisfy another component of the decree." Id. at 571 (3).

Similarly, this Court found in *Borotkanics*, supra, that the trial court improperly modified the parties' divorce decree by requiring the husband to sell properties that the divorce decree merely required him to refinance. 344 Ga. App. at 876, 878-879 (2). In that case, the divorce decree mandated that the husband "shall retain" two properties, the wife agreed to execute quitclaim deeds for each property, and the husband was ordered to refinance both properties to remove the wife's name from the mortgages. Id. at 876. The husband failed to refinance either property. Id. To purge himself from contempt, the court ordered the husband to place one of the properties on the market. Id. This Court reversed the trial court's contempt order, finding that because the divorce decree did not require the husband to sell the property if he failed to comply with his obligation to refinance the mortgage, the court's order to sell that property amounted to an impermissible modification of the divorce decree. Id. at 879 (2).

In short, the trial court's requirement in the contempt order that the husband place both of the properties at issue on the market and take any reasonable offers to

sell the properties amounts to a modification, not an interpretation, of the prior orders. *Doane*, 289 Ga. at 381 (1); *Roquemore*, 281 Ga. at 594. Consequently, we reverse the court's contempt judgment to the extent that it requires the husband to sell the two properties at issue.

While the trial court committed reversible error by crafting a remedy that modified the terms of the parties' divorce decree and consent orders in this contempt proceeding, as the Supreme Court noted in *Darroch*, our ruling does not mean that the trial court is left with no means of enforcing these orders:

> The court might order [the husband] to pay [the wife] a significant sum every day until he purges his contempt. Or the trial court could incarcerate [the husband] until he purges his contempt — an experience that [the husband] . . . would likely find to be very unpleasant and expensive and a particularly strong incentive to comply with the divorce decree. [The husband] may indeed find the purge conditions imposed by the trial court on remand to be far more draconian than those imposed by the order he has successfully appealed. If he truly cannot refinance the [properties], he might then turn to the one other readily apparent method of purging his contempt — selling the [properties] (perhaps at . . . a . . . loss) to [pay his wife what he owes]. If that happens, however, it will be based upon [the husband's] decision to take that action with the house specifically awarded to him in the divorce decree, rather than the

trial court's impermissible direct modification of that component of the decree's property division.

(Citations omitted.) 286 Ga. at 571-572 (3); accord *Doane*, 289 Ga. at 381-382 (2); *Borotkanics*, 344 Ga. App. at 879 (2).

2. The husband next asserts that the trial court abused its discretion in awarding the wife interest pursuant to OCGA § 7-4-12.1 without considering the required statutory factors. Again, we agree.

OCGA § 7-4-12.1 (a) provides that "[a]ll awards, court orders, decrees, or judgments rendered pursuant to Title 19 [addressing domestic relations] expressed in monetary amounts shall accrue interest at the rate of 7 percent per annum commencing 30 days from the date such award, court order, decree, or judgment is entered or an installment payment is due, as applicable." The statute gives trial courts the discretion whether to apply or waive past due interest, mandating that the court consider the following factors in making its determination:

(1) Good cause existed for the nonpayment of the child support;

(2) Payment of the interest would result in substantial and unreasonable hardship for the parent owing the interest;

(3) Applying, waiving, or reducing the interest would enhance or detract from the parent's current ability to pay child support, including the consideration of the regularity of payments made for current child support of those dependents for whom support is owed; and

(4) The waiver or reduction of interest would result in substantial and unreasonable hardship to the parent to whom interest is owed.

OCGA § 7-4-12.1 (a). Contrary to the wife's argument, the statute specifically states that it applies to "[a]ll awards, court orders, decrees, or judgments rendered pursuant to" the domestic relations title and not just child support cases. Id. We review a trial court's interest award for an abuse of discretion. *McCarthy v. Ashment*, 353 Ga. App. 270, 276 (5) (835 SE2d 745) (2019).

Here, following the court's conclusion regarding the amounts owed by the husband for alimony, lump sum payment, and extracurricular and healthcare costs for the children, the trial court's contempt order states in a separate paragraph: "Respondent is also responsible for statutory interest on these sums; total interest on all sums due and owing is calculated at $5694.83." The order does not indicate whether the court knew it had discretion to waive or reduce past due interest or whether it considered the statutory factors in exercising its discretion. The wife does

14

not present any statutory authority or case law making it the husband's responsibility to ensure the trial court undertakes its discretionary responsibility to consider the statutory factors before awarding past due interest in domestic relations cases. Under these circumstances, we must vacate the interest award and remand for consideration of the factors set out in OCGA § 7-4-12.1 (a). See *Claybrooks v. Claybrooks*, 364 Ga. App. 157, 161-162 (3) (b) (874 SE2d 190) (2022) (vacating interest award where trial court's order made no mention of and no findings with regard to the OCGA § 7-4-12.1 (a) factors); compare *McCarthy*, 353 Ga. App. at 276 (5) (affirming award of OCGA § 7-14-12.1 interest where trial court recognized its discretion to apply or waive past due interest, made several findings of fact regarding the financial circumstances of both parties, and ordered the husband to pay interest but deferred some of the interest payments).

3. Finally, the husband argues that the trial court abused its discretion in awarding the wife attorney fees under OCGA § 9-15-14. Because the husband does not assert that the award of fees is improper under OCGA § 9-15-14 (a), we affirm the

15

award of attorney fees under that subsection, but we vacate the award and remand for the trial court to reconsider its lump sum award.

Under OCGA § 9-15-14 (a), a trial court "shall" award reasonable and necessary attorney fees and expenses of litigation "to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." Under OCGA § 9-15-14 (b), a trial court "may" assess reasonable and necessary attorney fees and expenses of litigation in a civil action if "it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]" "[L]acked substantial justification" under that subsection "means substantially frivolous, substantially groundless, or substantially vexatious." (Punctuation omitted.) OCGA § 9-15-14 (b). "We will affirm a trial court's ruling on a claim for OCGA § 9-15-14 (a) attorney fees if there is any evidence to support the ruling." *Bennett v. McClam*, 358 Ga. App. 550, 551 (2) (855

16

SE2d 744) (2021). An award of attorney fees under OCGA § 9-15-14 (b), on the other hand, is discretionary and is reviewed for an abuse of discretion. *Slone v. Myers*, 288 Ga. App. 8, 14 (5) (653 SE2d 323) (2007), overruled in part on other grounds, *Reeves v. Upson Regional Med. Ctr.*, 315 Ga. App. 582 (726 SE2d 544) (2012).

In its order, the trial court in this case awarded the wife $8,583.34 in attorney fees "pursuant to OCGA § 9-15-14 (a) and § 9-15-14 (b) due to [the husband's] failure to make almost any payments due to [the wife]." The court detailed specific findings and ultimately concluded that the husband's defenses "contained such a complete absence of any justiciable issue of law or fact that [it could not] be reasonably believed that this court would accept [them]." The court further concluded that the husband's failure to make payments "lacked substantial justification and unnecessarily expanded these proceedings costing [the wife] time and money she should not have had to spend."

(a) The husband asserts that the contempt order does not specify whether the award is made under subsection (a) or (b). However, the court's order specifically notes that the attorney fee award is being made under both subsection (a) and (b), and

the court cites the statutory requirements for both subsections. This assertion lacks merit.

(b) The husband argues that the trial court's order fails to (i) "include findings of fact or conclusions of law as to how the claim or defense . . . lacked substantial justification, was intended to harass or delay the litigation, or unnecessarily expanded the proceedings" and (ii) "specify how or why that conduct rose to the level of 'litigation abuses' that OCGA § 9-15-14 (b) is meant to punish and deter." This argument also fails.

The husband's assertions only focus on the trial court's award under OCGA § 9-15-14 (b). The husband makes no mention of and does not dispute the propriety of the court's award of attorney fees under OCGA § 9-15-14 (a). The husband, therefore, has waived any argument with respect to fees awarded under that subsection:

> Pretermitting whether [the husband's] OCGA § 9-15-14 [(b)] argument has merit, the award was also made pursuant to OCGA § 9-15-14 [(a)], which [the husband] has failed to contest specifically or to address with legal argument and citation to authority. Because the award may be sustained on independent grounds, the merits of which are not before us,

addressing the error raised would be purely advisory, and this we are not authorized to do.

*Prime Home Properties v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 701 (2) (660 SE2d 44) (2008).

(c) The husband argues that the attorney fee award is erroneous because the trial court entered a "lump sum, unapportioned award, covering all of Wife's expenses in the contempt action, and was not limited to those fees incurred because of sanctionable conduct." Given the circumstances in this case, we must agree.

It is axiomatic that lump sum attorney fees are not permitted in Georgia, and in cases involving OCGA § 9-15-14 (a) or (b), a trial court "must limit the fees award to those fees incurred because of the sanctionable conduct." (Citation and punctuation omitted.) *Sponsler v. Sponsler*, 353 Ga. App. 627, 634 (5) (838 SE2d 921) (2020).

> [L]ump sum or unapportioned attorney fees awards are not permitted in Georgia, and we will vacate and remand for further factfinding where the trial court's order, on its face, fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the court awarded one amount of fees rather than another under OCGA § 9-15-14 (b).

(Citation and punctuation omitted.) *Moore v. Hullander*, 345 Ga. App. 568, 573 (2) (c) (814 SE2d 423) (2018).

Here, the trial court awarded the wife attorney fees "for having to bring this contempt action." The order indicates that the wife's fees totaled $8,583.34, and "she presented invoices from her attorney as well as testimony [and an attorney affidavit as] to the reasonableness of the fees." "From the trial court's order, however, it cannot be determined whether any part of that award flowed from [the h]usband's litigation of the remedies for contempt that have been reversed in this opinion." *Sponsler v. Sponsler*, 301 Ga. 600, 605 (3) (800 SE2d 564) (2017). Accordingly, "we must vacate the trial court's award of attorney fees and remand the case for reconsideration of that award in light of this opinion." Id.; accord *Williams v. Williams*, 362 Ga. App. 839, 847-848 (4) (a) (870 SE2d 462) (2022) (vacating attorney fee award and remanding for additional factfinding where the trial court awarded the entire amount of fees incurred during the course of the litigation without showing the complex decision-making process involved in reaching its dollar figure and describing how the award was apportioned to include only fees and expenses generated based on the husband's sanctionable conduct).

(d) In a two-sentence argument devoid of any citations of authority, the husband asserts that he was not afforded reasonable notice or an opportunity to adequately review and challenge the wife's counsel's billing statements because they were presented immediately prior to counsel's testimony as to their reasonableness. This argument lacks merit.

First, the wife's September 2023 motion for contempt requested attorney fees due to the husband's "refusal to follow this [c]ourt's [o]rder pursuant to an agreement he voluntarily entered into" and her incurrence of unnecessary fees. Her January 2024 amended motion for contempt sought "attorney fees for bringing this action as allowed by OCGA §§ 19-6-2, 9-15-14 and all other applicable Georgia law[.]" The parties specifically agreed to reserve the issue of attorney fees in the February 2024 temporary consent order on contempt. And the wife sought attorney fees and sanctions under, among other statutes, OCGA § 9-15-14 in her second amended motion for contempt filed on March 26, 2024. The husband received sufficient notice that the wife was seeking OCGA § 9-15-14 attorney fees in these ongoing contempt proceedings.

As for an opportunity to adequately review and challenge the billing statements, the husband does not point to any place in the record where he requested billing records prior to the hearing, challenged the introduction of the billing records, sought a continuance to review the records, or cross-examined the wife's counsel regarding the billing records. In fact, the husband's counsel had no objection to the billing records being introduced as an exhibit and, although he asked the wife a few questions about the billing records on cross-examination, he never mentioned any issue regarding inadequate time to review the billing records. We find no merit in this argument.

In short, we reverse the trial court's contempt judgment to the extent that it requires the husband to sell the two properties at issue. We conclude that the trial court abused its discretion in awarding the wife interest pursuant to OCGA § 7-4-12.1 without considering the required statutory factors and, accordingly, vacate the interest award and remand for consideration of the factors set out in OCGA § 7-4-12.1 (a). Finally, we affirm the trial court's award of attorney fees under OCGA § 9-15-14 (a),

but we vacate the award and remand for the trial court to reconsider its lump sum award.

*Judgment reversed in part and vacated in part, and case remanded with direction. McFadden, P. J., and Pipkin, J., concur.*